UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| RENEE NAJDA, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>MFA FINANCIAL, INC., et al.,<br><br>Defendants. | Civil Action No. |

**VERIFIED COMPLAINT AND JURY DEMAND**

## I. INTRODUCTION

1. Plaintiffs Renee Najda, Andrew Najda, and Charles Najda (together, "Najdas" or "Plaintiffs") bring their complaint for contempt and injunctive relief against Defendants MFA Financial, Inc. ("MFA"), MFRA Trust 2015-1 ("MFRA 2015"), MFA 2018-NPL1, LLC ("MFA 2018"), Wilmington Trust National Association ("Wilmington"), Planet Home Lending, LLC ("PHL"), PNMAC Capital Management, LLC ("PNMAC"), PMT NPL Financing 2015-1 ("PMT 2015"), and Citibank, N.A. ("Citibank") (together, "Defendants") for Defendants' violation of the judgment issued by the Court on March 30, 2018 ("Judgment"). *See* Citibank, N.A. v. Najda, C.A. No.: 14-cv-13593-GAO ("Judicial Foreclosure"), ECF No. 369. A true and correct copy of the March 30, 2018 Judgment is attached hereto as Exhibit A.

2. The Najdas added MFA, MFRA 2015, MFA 2018, Wilmington, and PNMAC, as defendants, though they were not parties to the prior litigation, as they are foreclosing nonjudicially—without authorization of the Court—, directing that illegal conduct, or aiding that illegal conduct in violation of the Judgment that both required a foreclosure sale to be ordered by the Court and did not authorize nonjudicial foreclosure. In addition, this is a complaint brought

by the Najdas against Defendants for unfair and deceptive debt collection practices, breach of the implied covenant of good faith and fair dealing, negligent infliction of emotional distress, and declaratory judgment.

3. Plaintiffs are proceeding against Defendants on an emergency basis because Wilmington and MFRA 2015's noticed nonjudicial foreclosure sale is set for Tuesday, December 17, 2024 at 1:00 PM. If the Court does not prevent the nonjudicial sale—not authorized by the Court and, therefore, in violation of the Judgment—Plaintiffs will suffer irreparable harm from the loss of their property.

4. Defendants have violated the Judgment, M.G.L. c. 244, §§ 11, 14, the federal Fair Debt Collection Practices Act, 15 U.S.C. §1692 et seq. ("FDCPA"); the Massachusetts Fair Debt Collection Practices Act ("MFDCA"); the Massachusetts debt collection statute, M.G.L. ch. 93, §49; the Massachusetts Attorney General's debt collection regulations, 940 C.M.R. 7.00 et seq.; the Massachusetts Banking Commissioner's regulations, 209 C.M.R. 18.00 et seq.; and M.G.L. ch. 93A.

5. As alleged more fully below, Defendants abandoned the Judgment because the Judgment does not authorize Citibank's privy or successor to foreclose and the Court "will not enter judgment against the Najdas on Count … VI (possession)." C.A. No.: 14-cv-13593, ECF No. 368. A true and correct copy of the order for judgment is attached hereto as Exhibit B.

6. Defendants, therefore, cannot execute on the Judgment and cannot obtain possession of the Property. Left with an unenforceable Judgment, Defendants willfully resorted to a series of illegal, unfair, and deceptive representations and acts, including conduct in contempt of the Judgment.

7. Central amongst those illegal acts, Defendants noticed the December 17, 2024

nonjudicial foreclosure sale in bad faith in violation of the Judgment that both does not allow nonjudicial foreclosure and requires the Court to enter an order authorizing a foreclosure sale before such a sale can be scheduled and in violation of M.G.L. c. 244, § 11 because Defendants scheduled the December 17, 2024 sale without an order from the Court allowing them to do so.

8. Defendants' unfair and deceptive conduct is far reaching. Defendants violated the automatic stay provisions under 940 CMR § 7.08 (the Massachusetts Fair Debt Collection Act), 209 C.M.R. 18.20(2), and 15 U.S.C. § 1692(g) when they continued their collection efforts despite the Najdas disputing the debt. Defendants willfully took collection actions against the Najdas, including two foreclosure sales actions without Court approval, knowing Defendants had not sent the Najdas a complete response to their dispute letter.

9. Upon information and belief, Defendants' executives willfully allow noncompliance with state law, federal law, and judgments to boost Defendants' profits.

10. Defendants took retaliatory action against the Najdas for arguing there was a lack of subject matter jurisdiction in the Judicial Foreclosure and to undermine the Judgment in the judicial foreclosure Defendants' privy litigated. Once the United States Court of Appeals for the First Circuit ("First Circuit") remanded on the issue of diversity jurisdiction, Defendants activated their retaliation and scheduled the February 6, 2023 nonjudicial foreclosure sale that did not strictly comply with the notice requirements of the statutory power of sale, pursuant to Mass. Gen. Laws ch. 244, § 14, and did not strictly comply with the condition precedent to the Mortgage's power of sale that requires the paragraph 22 notice ("Paragraph 22 Notice") be sent to the Najdas "prior to acceleration" and prior to Judgment. A true and correct copy of the September 4, 2019 Paragraph 22 Notice is attached hereto as Exhibit G. A true and correct copy of the Mortgage is attached hereto as Exhibit E. After the First Circuit returned the mandate,

Defendants redoubled their retaliatory action and scheduled the December 17, 2024 nonjudicial foreclosure sale in violation of the Judgment. A true and correct copy of the November 21, 2024 Notice of Sale is attached hereto as Exhibit C.

11. Given Defendants' wrongful actions are patent, Plaintiffs are likely to succeed on their claims, so an immediate injunction is necessary to prevent irreparable harm to Plaintiffs.

12. Given the audaciousness, continuity, and scope of Defendants' conduct, and their repeated disregard of the Najdas' demands that they comply with the Judgment, it is beyond argument that Defendants intentionally and repeatedly violated the Judgment. For these violations Defendants should be held in contempt and, at a minimum, be restrained from nonjudicial foreclosures of the Property.

13. The Najdas seeks to hold Defendants, which are the equivalent of speculating stock investors (purchasing and collecting debt without due diligence and thus dependent on illegal conduct for windfalls) and their agents, accountable for Defendants' and their agents' unfair and deceptive practices, misrepresentations, violations of law, violations of Federal debt collection regulations, violations of Massachusetts debt collection regulations, and their illegal and ongoing harassment of the Najdas.

14. The Najdas are entitled to actual, statutory, punitive, and compensatory damages arising from the improper manner in which Defendants and their agents acted, including but not limited to causing emotional distress, expenses incurred responding to Defendants' illegal foreclosures, and other damages. Defendants' improper conduct, moreover, constitutes unfair and deceptive trade practices proscribed by M.G.L. ch. 93A. As such, the Najdas are entitled to damages, doubled or trebled pursuant to M.G.L. ch. 93A, due to the misconduct of Defendants

and their agents.

## II. PARTIES

15. Renee Najda is an individual, who resides at 71 Flint Road, Concord, Massachusetts 01742 (“Property”).

16. Andrew Najda is an individual, who resides at the Property.

17. Charles Najda is an individual, who resides at the Property.

18. MFA is a corporation organized under the laws of Maryland with a principal place of business at One Vanderbilt, 1 Vanderbilt Avenue, Floor 48th, New York NY 10017.

19. MFRA 2015 is a statutory trust organized under the laws of Delaware with a principal place of business at One Vanderbilt, 1 Vanderbilt Avenue, Floor 48th, New York NY 10017.

20. MFA 2018 is a statutory trust organized under the laws of Delaware with a principal place of business at One Vanderbilt, 1 Vanderbilt Avenue, Floor 48th, New York NY 10017.

21. Wilmington is a national bank chartered under the National Bank Act with a principal place of business at 1100 North Market, Wilmington, DE 19890.

22. PHL is a limited liability company organized under the laws of Delaware with a principal place of business at 321 Research Parkway, Suite 303, Meriden, CT 06450.

23. PNMAC is a limited liability company organized under the laws of Delaware with a principal place of business at 3043 Townsgate Road, Westlake Village, CA 91361.

24. PMT 2015 is a Statutory Trust organized under the laws of Delaware with a principal place of business at 3043 Townsgate Road, Westlake Village, CA 91361.

25. Citibank is a national bank chartered under the National Bank Act with a principal

place of business at 399 Park Avenue, New York, NY 10022.

## III. JURISDICTION AND VENUE

26. Because of the Najdas' claims under the Fair Debt Collection Practices Act, the Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331.

27. This is a complaint for contempt for the Defendants' violation of the Judgment issued by the Court on March 30, 2018. Therefore, the Court has jurisdiction and venue in this case.

28. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in it and the Property that is the subject of the action is situated in it.

## IV. FACTUAL ALLEGATIONS

29. In May 1995, Renee Najda purchased a parcel of land located at 71 Flint Road, Concord, Massachusetts. Over the course of the next six years, she built a home on the Property. Since 2005, the Property has been the Najdas' primary residence.

30. On or about August 3, 2007, the Najdas refinanced a mortgage and executed an "Interest-Only Period Adjustable Rate Note" in the amount of $3,464,000.00 ("Note"). A true and correct copy of the Note is attached hereto as Exhibit D. Both Andrew and Renee Najda were listed as debtors on the Note. The identity of the original lender, and source of funding for the Note, is not known because several documents produced during discovery and CitiMortgage's own discovery responses establish that CitiMortgage was not the original lender. The original lender may be Citibank, N.A., Ameriquest Mortgage Company ("Ameriquest"), Capital Markets II, or a different entity.

31. To secure the Note, Renee Najda granted a mortgage to MERS as nominee for

CitiMortgage ("Mortgage") (together with the Note, "Loan"). The Mortgage was recorded at the Middlesex County (Southern District) Registry of Deeds on August 8, 2007 at book 49913, page 53. Exhibit E.

32. On October 22, 2010, the Najdas received a letter dated October 21, 2010 from CitiMortgage's attorney ("Harmon"), stating that it had been retained by CitiMortgage to foreclose on the Mortgage.

33. The letter stated that if the Najdas "notify this office in writing within the thirty-day period . . . that the debt, or any portion thereof, is disputed, . . . this office shall cease collection of this debt . . . ."

34. On October 21, 2010 the Note was accelerated. From this day and each day thereafter the Note remained accelerated.

**A. The Judicial Foreclosure**

35. On September 9, 2014, Citibank, at the direction of PNMAC (the investment manager controlling the Loan at issue and making all litigation strategy decisions), filed the judicial foreclosure ("Judicial Foreclosure") complaint in the United States District Court for the District of Massachusetts regarding the same Property, Loan, and alleged the same default as Defendants' February 6, 2023 and December 17, 2024 nonjudicial foreclosure sales. *See* Citibank v. Najda, N.A., C.A. No.: 14-cv-13593-GAO, ECF No. 1.

36. Citibank is a passive trustee without real and substantial control over the unincorporated entity. Citibank does not maintain a place of business in Massachusetts. Citibank does not keep assets within Massachusetts.

37. Citibank, at the direction of PNMAC, elected to foreclose judicially and not to foreclose nonjudicially. PNMAC controls Citibank's litigation strategy.

38. PNMAC specializes in managing mortgage-related assets, including residential nonperforming and underperforming loans and mortgage-backed securities. PNMAC does not maintain a place of business in Massachusetts. PNMAC does not keep assets within Massachusetts.

39. Citibank and PNMAC knew that by choosing to file a judicial foreclosure action that upon entry of judgment neither Citibank nor its successors, with an interest in the judgment, could pursue a nonjudicial foreclosure.

40. At no point prior to judgment entering in the Judicial Foreclosure did Citibank or a substituted plaintiff move to dismiss the Judicial Foreclosure in order to pursue a nonjudicial foreclosure.

41. Citibank, PNMAC, the substituted plaintiffs, and successors to Citibank's interest in the Loan knowingly chose to continue to pursue the Judicial Foreclosure through to judgment.

42. On June 6, 2016, the Najdas moved to dismiss challenging the existence of subject matter jurisdiction. C.A. No.: 14-cv-13593, ECF No. 150. On June 20, 2016, the Najdas moved for reconsideration on the issue of subject matter jurisdiction. C.A. No.: 14-cv-13593, ECF No. 158.

43. Citibank is the current plaintiff of the Judicial Foreclosure after two substitutions. From the second substitution and each day thereafter Citibank was plaintiff. PNMAC manages PMT 2015's assets and controls the Loan and litigation strategy, not Citibank. Just as PNMAC did when the Judicial Foreclosure was filed. PMT 2015 does not maintain a place of business in Massachusetts. PMT 2015 does not keep assets within Massachusetts.

44. On April 7, 2017, the Najdas filed a motion for clarification on subject matter jurisdiction. D. E. No. 204. On September 6, 2017, the Najdas moved to certify a jurisdictional

question for interlocutory review. C.A. No.: 14-cv-13593, ECF No. 284.

45. At the September 7, 2017 pretrial conference, Citibank, through counsel, voluntarily relinquished Count VI (possession) and Count VII (unjust enrichment). C.A. No.: 14-cv-13593, ECF No. 295, Transcript.

46. Citibank did not object to the October 20, 2017 pretrial Order entered by the Court listing the remaining counts to be tried, which did not include Count VI (possession) and Count VII (unjust enrichment). C.A. No.: 14-cv-13593, ECF No. 305.

47. On November 6, 2017, the trial began. The Court bifurcated the trial into jury and bench segments. On November 9, 2017 the jury verdict was returned. Also on November 9, 2017, the Najdas moved for a directed verdict on the basis the Court lacked subject matter jurisdiction.

48. On or before November 20, 2017, PNMAC directed Citibank to sell the Loan to PennyMac, Corp. The November 20, 2017 sale notice sent to the Najdas described this transaction. Citibank did not assign the mortgage to PennyMac, Corp. before Judgment entered.

49. On or before December 26, 2017, MFRA 2015 acquired the loan, before the Judgment entered on March 30, 2018, at the direction of MFA, the investment manager that controls MFRA 2015. The December 26, 2017 sale notice sent to the Najdas described this transaction. PennyMac, Corp. did not assign the mortgage to MFRA 2015 or Wilmington before Judgment entered.

50. MFA does not maintain a place of business in Massachusetts. MFA does not keep assets within Massachusetts.

51. MFRA 2015 is a subsidiary of MFA and is managed and controlled by MFA. MFRA 2015 does not maintain a place of business in Massachusetts. MFRA 2015 does not keep

assets within Massachusetts.

52. Wilmington does not maintain a place of business in Massachusetts. Wilmington does not keep assets within Massachusetts.

53. Counsel for Wilmington, MFRA 2015, and Citibank, Kevin Polansky, told the Middlesex County Superior Court at a hearing on February 17, 2023 that "This has been a long, drawn-out loan. …the loan has been sold because of this process. Nobody wants to seem to have it drag out for years on end, so they sell it to somebody who's willing to, you know, take it on."

54. MFA directed Wilmington and MFRA 2015 to purchase the Loan knowing the Judicial Foreclosure had been ongoing.

**B. The March 30, 2018 Judgment**

55. On March 30, 2018, the Court ordered that it "will not enter judgment against the Najdas on Count … VI (possession)." Exhibit B, C.A. No.: 14-cv-13593, ECF No. 368, Order for Judgment at 5. The Court dismissed Count VI (possession) and Count VII (unjust enrichment). C.A. No.: 14-cv-13593, ECF No. 369 at 3.

56. On March 30, 2018, the Court entered the Judgment, for the Judicial Foreclosure, and denied the Najdas' motion for directed verdict. Exhibit A, C.A. No.: 14-cv-13593, ECF No. 369. The Judgment was a final judgment on the merits. The Court terminated the case on March 30, 2018.

57. The Judgment amount was "the total sum of $4,833,073.61." Exhibit A, C.A. No.: 14-cv-13593, ECF No. 369 ⁋ 5.

58. The Judgment restricted the use of the power of sale to foreclose.

59. The Judgment required the Court to order a sale of the Property for a foreclosure sale of the Property to take place. Without an order of the Court authorizing a sale of the

Property, a foreclosure sale could not take place.

60. The Judgment did not include an authorization to foreclose nonjudicially and did not include language allowing a foreclosure by power of sale without an order of the Court. The Judgment did not include language authorizing foreclosure by entry.

61. The Judgment prohibits nonjudicial foreclosure because the Judgment does not authorize nonjudicial foreclosure. The Judgment prohibits foreclosure without an order of the Court authorizing the sale of the Property. The Judgment prohibits foreclosure by entry.

62. The Judgment does not require Ms. Najda or Mr. Najda to make periodic payments.

63. The Judgment does not require Ms. Najda or Mr. Najda to pay the property taxes, insurance, or any other carrying costs for the Property.

64. The Judgment does not require Ms. Najda or Mr. Najda to pay the costs or attorney's fees Defendants incur attempting to enforce or execute on the Judgment.

65. The Judgment does not authorize a successor, which has been assigned the Judgment from Citibank, to foreclose.

66. The Mortgage and Note merged into the Judgment upon entry of the Judgment on March 30, 2018.

67. The Judgment does not specify that any terms or provisions of the Note or Mortgage survive upon the entry of the Judgment. The obligations of both contracts were extinguished. The Note and Mortgage became nullities.

68. Upon information and belief, executives at MFA, controlling MFRA 2015 and its agent Wilmington, became enraged that the Judgment barred obtaining possession of the Property.

69. Upon information and belief, MFA expressed its displeasure to PNMAC, the company controlling the entity from whom MFA had purchased the Loan before the Judgment entered.

70. Aware of the Judgment from its entry on March 30, 2018, none of the Defendants moved in the Judicial Foreclosure to amend the Judgment or moved to intervene in the Judicial Foreclosure and amend the Judgment.

71. Aware of the Judgment from its entry on March 30, 2018, none of the Defendants moved in the Judicial Foreclosure to preserve the right of nonjudicial foreclosure or moved to intervene in the Judicial Foreclosure and to preserve the right of nonjudicial foreclosure.

### C. Mortgage Assignments After the March 30, 2018 Judgment Are Void—A Nullity—Because the Mortgage Had Been Merged into the Judgment

72. On June 13, 2018, Citibank, N.A., not in its individual capacity, but solely as separate trustee for PMT NPL Financing 2015-1 attempted to assign the Mortgage to PennyMac, Corp. Since the Mortgage had merged into the Judgment on March 30, 2018, no Mortgage existed to assign. The June 13, 2018 assignment was a nullity. The Mortgage was not assigned to PennyMac, Corp. A true and correct copy of the June 13, 2018 assignment is attached hereto as Exhibit H.

73. On June 21, 2018, PennyMac, Corp. attempted to assign the Mortgage to Wilmington Trust, National Association, not in its individual capacity but solely in its capacity as trustee of MFRA Trust 2015-1. Since the Mortgage had merged into the Judgment on March 30, 2018, no Mortgage existed to assign. The June 21, 2018 assignment was a nullity. The Mortgage was not assigned to Wilmington Trust, National Association, not in its individual capacity but solely in its capacity as trustee of MFRA Trust 2015-1. A true and correct copy of the June 21, 2018 assignment is attached hereto as Exhibit I.

74. On March 29, 2019, the Court denied Citibank's motion to assign the Judgment to Wilmington and MFRA 2015. C.A. No.: 14-cv-13593, ECF No. 410. From March 29, 2019 onwards, Citibank did not assign the Judgment.

75. On April 26, 2019, the Najdas appealed to the First Circuit (case no. 19-1434) and again on January 3, 2020 (case no. 20-1057).

**D. Citibank Acquiesced to the Judgment Even Though Judgment for Possession Did Not Enter for Citibank**

76. Citibank did not cross appeal. Citibank did not move to amend the Judgment. No Defendant intervened to challenge the Judgment.

**E. Defendants Sent a False Paragraph 22 Notice After Judgment**

77. On September 4, 2019, Wilmington, MFRA 2015, and PHL sent the not-strictly complying paragraph 22 notice (notice of default and right to cure) ("Paragraph 22 Notice") after the Judgment in the Judicial Foreclosure had entered and after acceleration. Exhibit G, September 4, 2019 Paragraph 22 Notice.

78. PHL acts both as servicer and debt collector for MFA, MFRA 2015, and Wilmington.

79. PHL does not maintain a place of business in Massachusetts. PHL does not keep assets within Massachusetts.

80. PHL, on behalf of MFA, MFRA 2015, and Wilmington, in the Paragraph 22 Notice demanded payment of $5,249,714.08.

81. The Paragraph 22 Notice alleged the same August 1, 2011 initial default date as Citibank's complaint. C.A. No.: 14-cv-13593, ECF No. 1 ⁋ 17.

82. PHL's demand for and statement that $5,249,714.08 was owed were false statements. PHL knew the Judgment existed and the Judgment amount was $4,833,073.61.

83. Since the loan had been accelerated and Judgment had entered the installment payments were extinguished as of March 30, 2018. Wilmington, MFRA 2015, and PHL's Paragraph 22 Notice falsely stated there were "Unpaid Mortgage Payments" of $77,599.75 on 04/01/18, 05/01/18, 06/01/18, 07/01/18, 08/01/18, and 09/01/18. The Notice falsely stated there were "Unpaid Mortgage Payments" of $79,390.43 on 10/01/18, 11/01/18, 12/01/18, 01/01/19, 02/01/19, 03/01/19, 04/01/19, 05/01/19, 06/01/19, 07/01/19, 08/01/19, 09/01/19.

84. The Paragraph 22 Notice, sent after Judgment, neither complied with the terms of the Mortgage, which had been merged into the Judgment, nor complied with Massachusetts law.

### F. PHL Failed to Send the Debt Verification and Violated the Automatic Stay Provisions

85. PHL, on behalf of Wilmington and MFRA 2015, in the Paragraph 22 Notice further stated: "Unless you notify this office within 30 days after receiving this notice that you dispute the validity of the debt or any portion thereof, this office will assume this debt is valid. If you notify this office in writing within 30 days of receiving this notice, this office will obtain verification of the debt and will mail you a copy of such verification."

86. In response to PHL's September 4, 2019 Notice, on October 1, 2019, the Najdas disputed the entire alleged account and debt by a letter ("Dispute Letter") sent to PHL via certified mail with return receipt. A true and accurate copy of the Dispute Letter is attached as Exhibit K.

87. The Najdas sent the Dispute Letter to PHL within 30 days of receiving PHL's September 4, 2019 Notice on September 29, 2023.

88. In the Dispute Letter, the Najdas requested: (1) "<u>all</u> papers or copies of papers and electronic records in the possession of PHL, MFRA Trust 2015-1, LLC ("MFRA"), Wilmington Trust National Association ("WT") and any of their agents which bear our signatures and which

concern the Loan being collected"; (2) "the ledger, account card, or similar record in the possession of PHL, MFRA, WT, and any of their agents, whether paper or electronic, which reflects the date and amount of all payments, credits, and charges concerning the Loan"; (3) "the name and address of the original creditor"; and (4) "a copy of each judgment related to the Loan."

89. The October 1, 2019 Dispute Letter was delivered to PHL on October 3, 2019.

90. Notified that the alleged account was disputed, PHL did not obtain a complete verification of the alleged account and mail it to Najdas.

91. PHL did not send the Najdas "a copy of each judgment related to the Loan."

92. Notified that the alleged debt was disputed, PHL did not cease all debt collection activities on October 3, 2019.

93. Instead of ceasing its collection activities, from October 3, 2019 onwards, PHL, as an agent of MFA, MFRA 2015, and Wilmington, continued its debt collection activities through phone calls, letters, foreclosure actions, and legal actions.

94. Despite not sending the Najdas verification of the debt in response to their Dispute Letter, from October 3, 2019 onwards PHL, as an agent of MFA, MFRA 2015, and Wilmington, mailed the Najdas letters demanding payment.

95. Despite not sending the Najdas verification of the debt in response to their Dispute Letter, from October 3, 2019 onwards PHL, as an agent of MFA, MFRA 2015, and Wilmington, PHL organized and executed two foreclosure sales of the Property, in February 2023 and December 2024, without the authorization of the Court.

**G. PHL Identifies MFA 2018 as the Creditor**

96. On October 17, 2019, PHL sent the letter stating "MFA 2018-NPL1, LLC" owns

the loan, not Wilmington or MFRA 2015. A true and correct copy of the October 17, 2019 letter is attached hereto as Exhibit J. Citibank, which is Wilmington and MFRA 2015's privy in the Judicial Foreclosure, did not dispute or challenge the authenticity and accuracy of the letter during that action.

97. Neither Wilmington nor MFRA 2015 nor PHL nor MFA 2018 denied the October 17, 2019 letter was accurate in communicating MFA 2018's relation to the Loan that had been merged into the Judgment.

98. On November 14, 2019, PHL sent the letter stating "The owner of the Loan is MFA 2018-NPL1, LLC."

99. Neither Wilmington nor MFRA 2015 nor PHL nor MFA 2018 denied the November 14, 2019 letter was accurate in communicating MFA 2018's relation to the Loan that had been merged into the Judgment.

100. MFA 2018 is a subsidiary of MFA and is managed and controlled by MFA. MFA 2018 does not maintain a place of business in Massachusetts. MFA 2018 does not keep assets within Massachusetts.

101. On November 11, 2019 Citibank represented to the Court on behalf of itself and Wilmington that "Plaintiff's assignee is unable to effectuate the judicial foreclosure authorized by the Judgment." C.A. No.: 14-cv-13593, ECF No. 443.

102. Defendants knew only a foreclosure authorized by the Judgment could be completed. Defendants also knew the Judgment did not authorize nonjudicial foreclosure and all forms of foreclosure not included in the Judgment were unavailable to Defendants.

103. On December 2, 2019, Citibank represented to the Court on behalf of itself and Wilmington that the "Judgment cannot yet be administered/executed, and therefore the issue of

who may properly foreclose under the Judgment is premature. In any event, Plaintiff is entitled to assign its interests under the Judgment for enforcement by a different entity." C.A. No.: 14-cv-13593, ECF No. 447.

104. Defendants knew a transfer of the Judgment was required to transfer the right to foreclose, under the Judgment, from Citibank to another entity. Defendants knew a transfer of the mortgage and note would not transfer the right to foreclose because entry of the Judgment had extinguished the Mortgage and Note.

105. On April 17, 2020, Citibank stated in its motion to dismiss the appeal that "Plaintiff plans to file [a motion for sale] in the District Court concomitantly with the filing of this motion." 1st Cir. Doc. No. 00117578833. Citibank did not file a motion for sale pursuant to paragraph 5 of the Judgment. Citibank did not move to substitute Wilmington and MFRA 2015 as the plaintiff.

106. In the motion, Citibank further stated, "M.G.L. c 244, §§ 3-5, 11 ('If a conditional judgment has been entered upon a mortgage containing a power of sale, the court shall, instead of issuing a writ of possession, at the request of the plaintiff order the property to be sold pursuant to such power. The plaintiff shall thereupon execute the power and do all things required by it or by the court.')." Citibank knew both it and its privies had to abide by the Judgment.

107. In the motion, Citibank reemphasized, "concomitantly with the filing of this Motion, Plaintiff will seek an order in the District Court pursuant to M.G.L. c. 244, § 11, authorizing the sale of the Property 'pursuant to the power of sale contained in the Mortgage with such sale to be published and noticed in the same or similar manner as provided for in Mass. Gen. Laws ch. 244, § 14, and upon such other terms and conditions as the Court may

require.'" Citibank did not seek an order authorizing the sale of the Property. Wilmington and MFRA 2015 did not move to intervene and seek an order authorizing the sale of the Property.

108. On September 11, 2020, Citibank moved for monthly use and occupancy or bond payments pending appeal to be held for Wilmington. C.A. No.: 14-cv-13593, ECF No. 461. The Judgment does not require the Najdas pay monthly escrow payments, taxes, or any other carrying costs. The Court did not grant Citibank's motion.

109. On February 2, 2021, the Judicial Foreclosure appeal was submitted to a panel of the First Circuit.

110. On December 30, 2022, the First Circuit "ordered that the matter be remanded to the district court for further fact finding and a determination whether there was minimal or complete diversity between the parties at the time the action was commenced" and denied plaintiff Citibank's motion to dismiss the appeal.

**H. Defendants Move to Foreclose Nonjudicially in Violation of the Judgment and Massachusetts Law**

111. Upon information and belief, Defendants, including PNMAC, Citibank, MFA, Wilmington, MFRA 2015, and PHL, understood the First Circuit remanding on the issue of diversity jurisdiction to mean there was a significant likelihood that the Judgment in the Judicial Foreclosure was at risk of being vacated for lack of subject matter jurisdiction.

112. Upon information and belief, angry at having litigated an action for eight years without having established subject matter jurisdiction, Defendants executed a premeditated plan to retaliate against the Najdas for arguing in filings to the Court and then First Circuit that there was not subject matter jurisdiction from the start of the action and for the First Circuit remanding on the issue of diversity jurisdiction. The First Circuit directed the Court to report in writing within 60 days whether there was complete and minimal diversity when the action commenced.

113. Upon information and belief, Defendants' premeditated plan was to retaliate by racing to complete a parallel nonjudicial foreclosure to exert maximum pressure on the Najdas.

1) Defendants' 2023 Notice of Sale Violates the Judgment, Does Not Strictly Comply With M.G.L. ch. 244, §§ 11, 14, and Contains False Statements

114. Defendants knew before mailing the Notice of Sale for the February 6, 2023 10:00 AM nonjudicial foreclosure sale that it did not comply with M.G.L. ch. 244, § 14 and the Mortgage's conditions precedent and the loan's note had been accelerated before the September 4, 2019 Paragraph 22 Notice had been sent, making the notice noncompliant with paragraph 22.

115. Defendants still sent the illegal Notice of Sale.

116. On January 13, 2023, Defendants sent the Notice of Sale for the February 6, 2023 10:00 AM nonjudicial foreclosure sale to the Najdas.

117. On January 18, 2023, the Najdas received the Notice of Sale, dated January 13, 2023, from Wilmington and MFRA 2015 stating the nonjudicial foreclosure sale would be held on February 6, 2023 at 10:00 am. A true and correct copy of the January 13, 2023 Notice of Sale is attached hereto as Exhibit L.

## I. Defendants Refuse to Cancel the 2023 Nonjudicial Foreclosure Sale

118. On January 19, 2023 and January 20, 2023, the Najdas emailed counsel for Citibank, Wilmington, and MFRA 2015 asking for assent for a motion to stay and for cancellation of the February 6, 2023 nonjudicial foreclosure sale. A true and correct copy of the email is attached hereto as Exhibit M.

119. Wilmington and MFRA 2015, knowing the February 6, 2023 foreclosure sale did not comply with the Judgment and did not strictly comply with M.G.L. ch. 244, § 14 and the Mortgage's conditions precedent, refused to cancel the sale when asked to do so via email.

120. On January 19, 2023, the Najdas mailed via certified mail to PHL and priority

mail to Wilmington, MFRA 2015, and Citibank's counsel a "Notice of Failure to Comply With Judgment and Notice of Failure to Comply With Mortgage Paragraph 22."

121. On January 30, 2023, Citibank at the direction of PNMAC in coordination with MFA, MFRA 2015, and Wilmington falsely represented to the Court that "Wilmington Trust is nothing more than a 'stranger[] to the original proceeding[].'" ECF No. 478.

122. Citibank knew any successor was a privy and not a stranger.

123. On February 2, 2023, the Najdas emailed counsel for Wilmington and MFRA 2015 to explain again that the February 6, 2023 foreclosure sale was void for failing to "strictly comply with Mass. Gen. Laws ch. 244, § 14" and for failing to strictly comply with the Mortgage's condition precedent in paragraph 22 to the power of sale.

124. Wilmington and MFRA 2015 did not cancel the February 6, 2023 nonjudicial foreclosure sale. Wilmington and MFRA 2015 willfully continued to pursue the illegal foreclosure, knowing that it did not comply with the Judgment and Massachusetts law.

125. On February 3, 2023, two of the Najdas filed a complaint in the Middlesex County Superior Court against MFRA 2015, Wilmington, PNMAC, PMT 2015, and PHL and filed a motion for a temporary restraining order to halt the February 6, 2023 foreclosure sale.

126. On February 3, 2023, the Superior Court granted the temporary restraining order and held, "Plaintiff's have demonstrated via verified Complaint a likelihood success on the merits and that the risk of irreparable harm out weighs the potential to the Defendants. The Defendants are hereby enjoined and prohibited from proceeding with the 2/06/23 foreclosure sale of 71 Flint Road Concord, MA." File Ref. No. 3. The Superior Court ordered a hearing on a preliminary injunction would take place on February 17, 2023 at 1:30 pm.

127. Served the complaint and order on the temporary restraining order, MFRA 2015

and Wilmington did not cancel the February 6, 2023 nonjudicial foreclosure sale. MFRA 2015 and Wilmington rescheduled the sale for February 17, 2023 at 4:00 pm.

128. Two of the Najdas filed a motion for preliminary injunction. File Ref. No. 8.

129. After a hearing on February 17, 2023, the Superior Court granted the Najdas' motion for a preliminary injunction. The Superior Court held, "The Plaintiff's Motion for P.I. to preclude foreclosure 'non judicial' and auction of the subject property is ALLOWED. The defendants shall not take any steps to commence a foreclosure or auction of the property the defendants is to maintain the status quo regarding the mortgage and real estate interest. … The Plaintiff has made a showing of a likelihood of success on some of their claims. If the Defendants foreclose the plaintiff's would suffer irreparable harm."

130. MFRA 2015 and Wilmington did not cancel the February 17, 2023 foreclosure sale. MFRA 2015 and Wilmington rescheduled the sale for February 23, 2023.

131. Believing the Court had exclusive in rem jurisdiction over the Property, the Najdas, plaintiffs to the Superior Court action, voluntarily dismissed the Superior Court complaint. File Ref. No. 10.

132. The Najdas moved for injunctive relief to enjoin the February 23, 2023 nonjudicial foreclosure. C.A. No.: 14-cv-13593, ECF No. 485.

133. On February 23, 2023, Citibank at the direction of PNMAC in coordination with MFA, MFRA 2015, and Wilmington falsely represented to the Court that "First, the Judgment does not apply to Wilmington Trust. Second, the Judgment concerns only judicial foreclosures." C.A. No.: 14-cv-13593, ECF No. 488.

134. Citibank knew the Judgment applied to a privy such as "Wilmington Trust." Citibank willfully lacked candor to the Court.

135. Upon information and belief, the basis for not moving to substitute Wilmington into the Judicial Foreclosure was to attempt to falsely present plausible deniability that MFA, MFRA 2015, and Wilmington were not privies to the Judgment. Defendants did so because they recognized that the Judgment did not allow them to obtain possession.

136. By an order dated February 23, 2023, the Court granted the motion in part and ordered, "This matter is before the district court on a limited remand on the question of diversity jurisdiction only, and the Court of Appeals has stated that it otherwise retains jurisdiction over the appeal. Consequently, this Court will issue a temporary restraining order enjoining the sale of the subject property––71 Flint Road, Concord, MA 01742––for a period of fourteen (14) days in order to maintain the status quo over the property so that the issue may be properly presented to the Court of Appeals." C.A. No.: 14-cv-13593, ECF No. 489.

137. MFRA 2015 and Wilmington did not cancel the February 23, 2023 foreclosure sale. MFRA 2015 and Wilmington rescheduled the sale for March 13, 2023 at 1:00 pm.

138. Upon information and belief, Defendants knew the March 13, 2023 sale violated the terms of the Judgment and Massachusetts law and expressed that understanding through written communications between themselves and internally with their respective firms. Intent on inflicting emotion and other harm on the Najdas as revenge for the Najdas effectively defending the Judicial Foreclosure, Defendants kept the sale scheduled.

139. On March 2, 2023, the Najdas moved in the First Circuit for injunctive relief to enjoin the March 13, 2023 nonjudicial foreclosure.

140. On March 7, 2023, the First Circuit ordered supplemental briefing after the supplemental record of the limited remanded had been entered.

141. Upon information and belief, Defendants, knowing the nonjudicial sale was not

authorized under the Judgment and violated Massachusetts law, feared the First Circuit would grant injunctive relief barring the foreclosure like the Superior Court had and the District Court had. They expressed this reasoning in written communications.

142. On March 9, 2023, Citibank filed a notice that stated, “Citibank, N.A., not in its individual capacity, but solely as separate trustee for PMT NPL Financing 2015-1 (‘Plaintiff’) hereby respectfully provides notice that nonparty Wilmington Trust, National Association, not in its individual capacity but solely in its capacity as trustee of MFRA Trust 2015-1 (‘Wilmington Trust’) has cancelled the nonjudicial foreclosure sale previously scheduled for March 13, 2023, but reserves the right to re-notice it in the future.” 1st Cir. Doc. No. 00117984115.

143. MFRA 2015 and Wilmington cancelled the March 13, 2023 foreclosure sale.

144. Citibank did not move to substitute Wilmington and MFRA 2015 as the plaintiff in the Judicial Foreclosure. Citibank did not assign the Judgment.

145. None of the Defendants moved for the Court to order a sale pursuant to the Judgment.

146. On July 12, 2024, the First Circuit affirmed in Appeal Nos. 19-1434, 20-1057, 23-1284, 23-1758. Therefore, the First Circuit affirmed the Judgment, including the language requiring an order of the Court for a sale of the Property to take place and the Court’s order for judgment that the Court “will not enter judgment against the Najdas on Count … VI (possession).” Exhibit B, C.A. No.: 14-cv-13593, ECF No. 368.

147. On October 7, 2024, the mandate of the First Circuit was entered. C.A. No.: 14-cv-13593, ECF No. 511.

148. Citibank did not move to substitute Wilmington and MFRA 2015 as the plaintiff in the Judicial Foreclosure. Citibank did not assign the Judgment.

149. Though Citibank, at the direction of PNMAC and MFA, opposed the Najdas' motion to stay the mandate pending resolution of the Najdas' petition for certiorari to the United States Supreme Court, none of the Defendants moved for the Court to order a sale pursuant to the Judgment once the mandate was sent to the Court.

**J. Defendants Move to Foreclose Nonjudicially—the Second Time—in Violation of the Judgment and Massachusetts Law**

150. MFA, MFRA 2015, Wilmington, PHL understood and concluded the Judgment could not be used to complete the foreclosure process because the ultimate step of foreclosure possession could not be completed.

151. Upon information and belief, communications between Defendants and internal communications in each firm, including written communications, memorialize that Defendants' knew the Judgment prohibited them from completing a foreclosure and obtaining possession.

152. Having determined that the Judgment could not be used to complete a foreclosure and obtain possession of the Property, MFA, MFRA 2015, Wilmington, PHL created and implemented a plan to nonjudicially foreclosure on the Property. All Defendants knew a nonjudicial foreclosure was prohibited under the Judgment and Massachusetts law.

153. Defendants willfully decided to violate the Judgment by not seeking an order from the Court to authorize a foreclosure sale and moving to complete a nonjudicial foreclosure.

154. Defendants willfully decided to violate the Judgment by not seeking clarification from the Court whether a nonjudicial foreclosure could be conducted.

155. Keen to keep the illegal nonjudicial foreclosure that violates the Judgment secret until the last minute, Defendants neither notified the Court nor the Najdas that MFA, MFRA 2015, Wilmington, and PHL would schedule a nonjudicial foreclosure sale.

1) Defendants' Certification Does Not Comply With 209 C.M.R. 18.24(2)(c) and Contains False Statements

156. On October 14, 2024, within 7 days of the mandate, PHL created the certification relative to foreclosing mortgage's right to foreclose pursuant to 209 C.M.R. 18.24(2)(c) ("209 C.M.R. 18.24 Certification") as a step to complete the nonjudicial foreclosure.

157. Senior Vice President of PHL Thomas O'Connell signed the 209 C.M.R. 18.24 Certification.

158. Mr. O'Connell, from PHL's business records he reviewed, knew the Judgment had entered and, therefore, the Mortgage and Note had been merged into the Judgment.

159. Mr. O'Connell deceptively failed to state in the 209 C.M.R. 18.24 Certification that the Loan had been extinguished upon entry of the Judgment.

160. In the 209 C.M.R. 18.24 Certification, Mr. O'Connell falsely stated "Wilmington Trust, National Association, not in its individual capacity but solely in its capacity as trustee of MFRA Trust 2015-1 is the holder of the mortgage." Citibank did not transfer the Note to Wilmington prior to March 30, 2018. Because the Judgment was entered on March 30, 2018, the Note ceased to exist as of that date. Therefore, a transfer of the Note to Wilmington, after March 30, 2018, constitutes a legal nullity.

161. Since the Mortgage had merged into the Judgment, the June 13, 2018 and June 21, 2018 mortgage assignments were void. There was nothing to assign. Wilmington could not become holder of the Mortgage.

162. In the 209 C.M.R. 18.24 Certification, Mr. O'Connell falsely stated "The Note is currently owned by Wilmington Trust, National Association, not in its individual capacity but solely in its capacity as trustee of MFRA Trust 2015-1."

163. In the 209 C.M.R. 18.24 Certification, Mr. O'Connell falsely stated the "Loan

[existed and] is in default." Mr. O'Connell, from PHL's business records he had reviewed, knew Judgment had entered and, therefore, the Loan did not exist and was not in default because it had been merged into the Judgment. Mr. O'Connell knew that the Loan had been extinguished on March 30, 2018.

164. Mr. O'Connell and PHL, on behalf of Defendants, willfully misrepresented the status of the Loan, void mortgage assignments as valid, the identity of the Mortgage holder, the identity of the Note holder, and failed to disclose that the Judgment had entered. Mr. O'Connell and PHL made the false statements to facilitate Defendants' illegal plan, in violation of the Judgment, to foreclose nonjudicially.

165. Upon information and belief, Mr. O'Connell routinely makes false representations in documents he prepares, e.g. certifications and affidavits, for PHL because it is PHL's standard business practice to use misrepresentations to expedite the collection of debts, reduce costs for PHL and its clients including MFA, and produce larger profits for PHL's owners and PHL's clients including MFA.

166. Since neither Wilmington nor MFRA 2015 held the note and mortgage as of October 14, 2024, which had been merged into the Judgment, the 209 C.M.R. 18.24 Certification failed to "certify in writing the basis for asserting that the foreclosing party has the right to foreclose" as required by 209 C.M.R. 18.24(2)(c).

2) <u>Defendants' 2024 Notice of Sale Violates the Judgment, Does Not Strictly Comply With M.G.L. ch. 244, §§ 11, 14, and Contains False Statements</u>

167. On November 21, 2024, Defendants sent the Notice of Sale ("2024 Notice of Sale") for the December 17, 2024 1:00 pm nonjudicial foreclosure sale to the Najdas.

168. On November 29, 2024, the Najdas received the 2024 Notice of Sale, dated November 21, 2024, from Wilmington and MFRA 2015 stating the nonjudicial foreclosure sale

would be held on December 17, 2024 at 1:00 PM. Exhibit C.

169. Citibank, Wilmington, and MFRA 2015 did not seek an order of the Court, as required under the Judgment and M.G.L. ch. 244, § 11, to notice the foreclosure sale of the Property. C.A. No.: 14-cv-13593, ECF No. 369, Judgment ⁋ 5.

170. The Court did not enter an order authorizing Wilmington and MFRA 2015 to mail the 2024 Notice of Sale to the Najdas and publish the 2024 Notice of Sale.

171. Defendants knew the Judgment required them to obtain an order of the Court before noticing a foreclosure sale. They willfully violated the Judgment.

172. Wilmington and MFRA 2015, at the direction of MFA, noticed the nonjudicial foreclosure sale knowing the Judgment does not contain a provision authorizing nonjudicial foreclosure.

173. Wilmington and MFRA 2015, at the direction of MFA, mailed and published the 2024 Notice of Sale in violation of the Judgment and M.G.L. ch. 244, § 11.

174. The 2024 Notice of Sale contains the false statement, "of which mortgage Wilmington Trust, National Association, not in its individual capacity but solely in its capacity as Trustee of MFRA Trust 2015-1 is the present holder by Assignment." Since the Mortgage had merged into the Judgment on March 30, 2018, the June 13, 2018 and June 21, 2018 mortgage assignments were void. Wilmington is not the holder of the Mortgage as of the date of the 2024 Notice of Sale.

175. The 2024 Notice of Sale does not strictly comply with M.G.L. ch. 244, § 14.

### K. Defendants Refuse to Cancel the 2024 Nonjudicial Foreclosure Sale

176. On December 11, 2024 and December 12, 2024, the Najdas emailed counsel for Citibank, Wilmington, and MFRA 2015, Kevin Polansky of Nelson Mullins, Julie Ranieri of

Korde & Associates, and John McNicholas of Korde & Associates, to explain that the December 17, 2024 foreclosure sale violates the Judgment. The Najdas asked Citibank, Wilmington, and MFRA 2015 to immediately cancel the December 17, 2024 nonjudicial foreclosure sale. A true and correct copy of the email is attached hereto as Exhibit F.

177. Wilmington and MFRA 2015 did not respond and, therefore, refused to cancel the sale when asked to do so via the email. Wilmington and MFRA 2015 refused knowing the December 17, 2024 nonjudicial foreclosure sale, like the February 6, 2023, et. al. nonjudicial foreclosure sales, violated the Judgment and did not strictly comply with M.G.L. ch. 244, §§ 11, 14.

178. Wilmington and MFRA 2015 did not cancel the December 17, 2024 foreclosure sale. Wilmington and MFRA 2015 willfully continue to pursue the illegal nonjudicial foreclosure, knowing that it violates the Judgment and Massachusetts law.

### L. Defendants Cannot Obtain Possession of the Property

179. The Najdas have possession of the Property.

180. Pursuant to the Court's order that it "will not enter judgment against the Najdas on Count … VI (possession)." Exhibit B, C.A. No.: 14-cv-13593, ECF No. 368. Judgment did not enter for Citibank on Count VI (possession) and Count VII (unjust enrichment). The Court "will not" and, therefore, Judgment for a claim of possession against the Najdas cannot enter in a new action.

181. Pursuant to res judicata, no court can enter judgment against the Najdas on a future claim of possession regarding the Property and Loan.

182. The Najdas can continue to possess the Property.

183. The Defendants cannot impede or end the Najdas' possession of the Property.

184. Defendants understood the Judgment barred them from obtaining possession. Furious with the outcome, Defendants resorted to an illegal nonjudicial foreclosure in 2023 and again in 2024 to deceptively foreclosure, without the Court's supervision, and deceptively take possession of the Property from the Najdas.

### M. Defendants Sent Deceptive Communications Containing False Statements and Threats to the Najdas More Than 50 Times Over Several Years

185. On December 16, 2021, PHL, on behalf of MFA, MFRA 2015, and Wilmington, mailed the Najdas the letter stating the amount due to reinstate the Loan is $6,053,411.44. PHL further stated charges of $1,456 for insurance, and $14 for inspection. Therein, PHL threatened the Najdas with "the loss of your home."

186. PHL's December 16, 2021 statements that $6,053,411.44 and charges for insurance, attorney fees, and inspection were owed by the Najdas and other statements within the communication were false statements. PHL knew the Judgment existed, the Judgment amount was $4,833,073.61, and the Judgment did not require the Najdas to pay insurance, attorney fees, or other costs. PHL knew the Judgment did not allow PHL, MFA, MFRA 2015, or Wilmington to obtain possession; yet, PHL threatened the Najdas with the loss of their home. PHL made the false statements and threats on behalf of MFA, MFRA 2015 and Wilmington.

187. On January 18, 2022, PHL, on behalf of MFA, MFRA 2015, and Wilmington, mailed the Najdas the letter stating the amount due to reinstate the Loan is $6,128,823.01. PHL further stated charges of $1,436.04 for insurance, and $8,910.97 for taxes. Therein, PHL threatened the Najdas with "the loss of your home."

188. PHL's January 18, 2022 statements that $6,128,823.01 and charges for insurance, attorney fees, and inspection were owed by the Najdas and other statements within the communication were false statements. PHL knew the Judgment existed, the Judgment amount

was $4,833,073.61, and the Judgment did not require the Najdas to pay insurance, attorney fees, or other costs. PHL knew the Judgment did not allow PHL, MFA, MFRA 2015, or Wilmington to obtain possession; yet, PHL threatened the Najdas with the loss of their home. PHL made the false statements and threats on behalf of MFA, MFRA 2015 and Wilmington.

189. Prior to the December 16, 2021 and January 18, 2022 communications, PHL, on behalf of MFA, MFRA 2015, and Wilmington, mailed communications to the Najdas one or more times each month from December 2020 to December 2021 that included false statements about the amount owed and expenses owed, along with threats to the Najdas. From January 2022 through August 2024 PHL, on behalf of MFA, MFRA 2015, and Wilmington, mailed communications to the Najdas one or more times each month between December 2020 and December 2021 that included false statements about the amount owed and expenses owed, along with threats to the Najdas.

190. On August 1, 2024, PHL, on behalf of MFA, MFRA 2015, and Wilmington, mailed the Najdas the letter stating the amount due to reinstate the Loan is $8,620,001.33. PHL further stated charges of $1,506.43 for insurance and $18,840.85 for city/town taxes were owed by the Najdas. Therein, PHL threatened the Najdas with “the loss of your home.”

191. PHL’s August 1, 2024 statements that $8,620,001.33 and charges for insurance and taxes were owed by the Najdas were false statements. PHL knew the Judgment existed, the Judgment amount was $4,833,073.61, and the Judgment did not require the Najdas to pay insurance and taxes. PHL knew the Judgment did not allow PHL, MFA, MFRA 2015, or Wilmington to obtain possession; yet, PHL threatened the Najdas with the loss of their home. PHL made the false statements and threats on behalf of MFA, MFRA 2015 and Wilmington.

192. On September 3, 2024, PHL, on behalf of MFA, MFRA 2015, and Wilmington,

mailed the Najdas the letter stating the amount due to reinstate the Loan is $8,704,086.37. PHL further stated charges of $1,527.34 for insurance, $2,999.50 and $30.94 for attorney fees, and $14.00 for inspection were owed by the Najdas. Therein, PHL threatened the Najdas with "the loss of your home."

193. PHL's September 3, 2024 statements that $8,704,086.37 and charges for insurance, attorney fees, and inspection were owed by the Najdas were false statements. PHL knew the Judgment existed, the Judgment amount was $4,833,073.61, and the Judgment did not require the Najdas to pay insurance, attorney fees, or inspection costs. PHL knew the Judgment did not allow PHL, MFA, MFRA 2015, or Wilmington to obtain possession; yet, PHL threatened the Najdas with the loss of their home. PHL made the false statements and threats on behalf of MFA, MFRA 2015 and Wilmington.

194. On October 1, 2024, PHL, on behalf of MFA, MFRA 2015, and Wilmington, mailed the Najdas the letter stating the amount due to reinstate the Loan is $8,786,893.51. PHL further stated charges of $1,527.34 for insurance were owed by the Najdas. Therein, PHL threatened the Najdas with "the loss of your home."

195. PHL's October 1, 2024 statements that $8,786,893.51 and charges for insurance were owed by the Najdas were false statements. PHL knew the Judgment existed, the Judgment amount was $4,833,073.61, and the Judgment did not require the Najdas to pay insurance. PHL knew the Judgment did not allow PHL, MFA, MFRA 2015, or Wilmington to obtain possession; yet, PHL threatened the Najdas with the loss of their home. PHL made the false statements and threats on behalf of MFA, MFRA 2015 and Wilmington.

196. On November 1, 2024, PHL, on behalf of MFA, MFRA 2015, and Wilmington, mailed the Najdas the letter stating the amount due to reinstate the Loan is $8,869,700.65. PHL

further stated charges of $1,506.43 for insurance and $18,840.85 for city/town taxes were owed by the Najdas. Therein, PHL threatened the Najdas with "the loss of your home."

197. PHL's November 1, 2024 statements that $8,869,700.65 and charges for insurance and taxes were owed by the Najdas were false statements. PHL knew the Judgment existed, the Judgment amount was $4,833,073.61, and the Judgment did not require the Najdas to pay insurance and taxes. PHL knew the Judgment did not allow PHL, MFA, MFRA 2015, or Wilmington to obtain possession; yet, PHL threatened the Najdas with the loss of their home. PHL made the false statements and threats on behalf of MFA, MFRA 2015 and Wilmington.

198. On December 2, 2024, PHL, on behalf of MFA, MFRA 2015, and Wilmington, mailed the Najdas the letter stating the amount due to reinstate the Loan is $8,952,605.29. PHL further stated charges of $1,593.01 for insurance and $72.00 and $11.50 for litigation were owed by the Najdas. Therein, PHL threatened the Najdas with "the loss of your home."

199. PHL's November 1, 2024 statements that $8,952,605.29 and charges for insurance and litigation were owed by the Najdas were false statements. PHL knew the Judgment existed, the Judgment amount was $4,833,073.61, and the Judgment did not require the Najdas to pay insurance and litigation costs. PHL knew the Judgment did not allow PHL, MFA, MFRA 2015, or Wilmington to obtain possession; yet, PHL threatened the Najdas with the loss of their home. PHL made the false statements and threats on behalf of MFA, MFRA 2015 and Wilmington.

200. Upon information and belief, PHL, on behalf of MFA, MFRA 2015 and Wilmington, sent the false statements to the Najdas at the direction of MFA in order to deceptively present the Loan as not subject to a Judgment so that Defendants could illegally restart the foreclosure process and avoid the consequences of the Judgment that does not allow

Citibank and its privies to obtain possession of the Property.

**N. Defendants' Deceptive, Unfair, and Illegal Actions Inflict Substantial Harm and Damage Plaintiffs**

201. From December 2020 onwards, Defendants continued to collect this debt from the Najdas through a series of letters sent by Defendants and their agents, including PHL, and through other actions in violation of the Judgment.

202. Defendants continued their collection activities, including two nonjudicial foreclosures in violation of the Judgment and Massachusetts law.

203. Defendants knew their conduct, as a large and powerful companies, of repeatedly threatening the Najdas, unsophisticated persons, through letters and other actions containing false representations was abusive conduct that harmed the Najdas.

204. The Najdas, who were distraught from Defendants' continuous harassment of them through barred collection activities and anxious from Defendants' constant bombardment of false representations, threats, and illegal foreclosures in violation of the Judgment and Massachusetts law suffered serious emotional distress.

205. Defendants' collection activities, including by its agents, harmed the Najdas and caused them to be unable to sleep for dozens of nights since Defendants began their collection activities and caused them such difficultly concentrating on tasks that they needed help to manage and respond to the influx of collection activities by Defendants, and caused other damage to the Najdas.

206. The significant volume of Defendants' and their agents' unlawful acts and collection activities have caused the Najdas significant and ongoing stress that has reduced Najdas' productivity.

207. The Najdas incurred expenses and time spent reviewing, scanning, researching,

and writing letters and drafts of filings related to Defendants' unlawful collection activities and illegal foreclosures, which the Najdas used, edited, or sent to Defendants and their agents.

208. The Najdas spent thousands of hours cataloging, discussing, and responding to Defendants' illegal conduct and incurred significant expenses.

209. Because of Defendants' conduct in violation of the Judgment and their debt collection activities the Najdas incurred printing, toner, paper, other materials, postage, and other costs.

210. Because of Defendants' debt collection activities the Najdas incurred travel costs.

211. The Najdas suffered significant stress and emotional distress from dozens of letters, threats, and the false information Defendants furnished to them and published in newspapers to the public.

212. As detailed above, the Najdas have suffered economic and other damages as a result of Defendants' and their agents' conduct.

## V. COUNTS

### A. COUNT I
### (Injunctive Relief Against all Defendants)

213. Plaintiffs repeat, re-allege and incorporate by reference the allegations contained in the above paragraphs.

214. Plaintiffs have a strong likelihood of success on their claim that Defendants' initiation of nonjudicial foreclosure proceeding on the Property violates the Judgment because: (1) the Judgment does not authorize nonjudicial foreclosure; and (2) the Judgment requires an Order of the Court before a foreclosure sale and Defendants did not obtain an order of the Court authorizing the sale.

215. Plaintiffs also have a strong likelihood of success on their claim that Defendants'

initiation of nonjudicial foreclosure proceeding on the Property violates Mass. Gen. Laws ch. 244, §§ 11, 14 and other Massachusetts law, constitutes unfair and deceptive trade practice under G.L. ch. 93A, is an intentional interference with advantageous business relations, and is a breach of the implied covenant of good faith and fair dealing. MFA, MFRA 2015, Wilmington, and PHL, with the support of PNMAC, MFA 2015, and Citibank, were so determined to retaliate against the Najdas for arguing there was a lack of subject matter jurisdiction in the Judicial Foreclosure, to have the Judgment vacated and action dismissed, that they moved to foreclose nonjudicially in 2023 and 2024 in violation of the Judgment and in violation of Massachusetts law.

216. In addition, MFA, MFRA 2015, Wilmington, and PHL failed to provide the September 4, 2019 Paragraph 22 Notice to the Najdas "prior to acceleration" and prior to the Judgment as the condition precedent in paragraph 22 of the Mortgage's power of sale requires. Defendants sent the Paragraph 22 Notice after the loan's note had been accelerated on October 21, 2010 and after the March 30, 2028 Judgment entered in the Judicial Foreclosure.

217. Mortgage ⁋ 22 requires the paragraph 22 notice be sent before acceleration as a condition precedent to the power of sale.

218. If the Court does not enjoin Defendants from foreclosing on the Property nonjudicially, Plaintiffs will suffer the irreparable harm of losing their real estate.

219. MFA, MFRA 2015, Wilmington, and PHL will suffer no harm from an injunction preventing it from foreclosing nonjudicially on the Property. The Judgment does not authorize nonjudicial foreclosure. No valid title could pass at the sale because the sale does not comply with the Judgment, does not comply with M.G.L. ch. 244, § 11, the insufficiency of the Notice of Sale, and insufficiency of the Paragraph 22 Notice.

220. MFA, MFRA 2015, Wilmington, and PHL cannot send a new paragraph 22 notice to cure the defect because the loan was already accelerated October 21, 2010 and the Judgment entered on March 30, 2018.

221. Without the ability to send a new strictly compliant paragraph 22 notice, MFA, MFRA 2015, Wilmington, and PHL cannot foreclose nonjudicially using the February 6, 2023 sale or any other future nonjudicial foreclosure sale.

222. Indeed, MFA, MFRA 2015, Wilmington, and PHL will suffer no harm from an injunction preventing them from nonjudicially foreclosing on the Property because they can attempt to use the Judgment from the Judicial Foreclosure (regarding the same loan, property, and alleged default) to attempt to enforce any alleged interest or right they have.

223. Plaintiffs are entitled to a temporary restraining order, after a hearing, a preliminary injunction, and upon entry of judgment in this action a permanent injunction, enjoining the Defendants and their successors from foreclosing nonjudicially on the Property.

224. Plaintiffs have a strong likelihood of success on their claim that Defendants' initiation of nonjudicial foreclosure proceedings violates the Judgment.

### B. COUNT II
### (Contempt for Violation of the March 30, 2018 Judgment Entered by the Federal District Court of the District of Massachusetts Against all Defendants)

225. Plaintiffs repeat, re-allege and incorporate by reference the allegations contained in the above paragraphs.

226. Judgment entered on March 30, 2018 in the Judicial Foreclosure.

227. Pursuant to the Judgment, Citibank or a privy, must obtain an order of the Court to proceed with a sale of the Property.

228. The Judgment does not include the right for Citibank or a privy to foreclose

nonjudicially. Nor does the Judgment include the right for Citibank or a privy to foreclose nonjudicially.

229. Upon entry of the Judgment, the nonjudicial power of sale provision within the Mortgage was extinguished.

230. Wilmington and MFRA 2015, under the direction and control of MFA, by seeking to foreclose on the same Note, Mortgage, and default as the Judicial Foreclosure and claiming to be successors in interest to Citibank, are in privy with Citibank. Wilmington and MFRA 2015, therefore, subject to the Judgment.

231. From March 30, 2018 onwards, Wilmington, MFRA 2015, and MFA knew the Judgment existed and had one or more copies of the Judgment.

232. Wilmington and MFRA 2015, under the direction and control of MFA, are foreclosing nonjudicially without an order of the Court.

233. The December 17, 2024 nonjudicial foreclosure sale that Wilmington and MFRA 2015, under the direction and control of MFA, scheduled is a clear violation of the Judgment and, therefore, must be cancelled.

234. All future nonjudicial foreclosure sales that Wilmington, MFRA 2015, and MFA may schedule would be clear violations of the Judgment and, therefore, Wilmington, MFRA 2015, MFA, their agents, and assignees must be barred from proceeding with all future nonjudicial foreclosure sales.

235. Asked in writing to abide by the Judgment, Wilmington and MFRA 2015, through counsel, refused to cancel the December 17, 2024 nonjudicial foreclosure sale and refused to not schedule a future nonjudicial foreclosure sale. Therefore, they refused to abide by the terms of the Judgment.

236. Despite the entry of the Judgment, Wilmington and MFRA 2015, under the direction and control of MFA, took action to foreclose nonjudicially—without an order of the Court—by scheduling a nonjudicial foreclosure sale on February 6, 2023, and rescheduling the sale for February 17, 2023, February 23, 2023, and March 13, 2023.

237. The February 6, 2023, February 17, 2023, February 23, 2023, and March 13, 2023 nonjudicial foreclosure sales that Wilmington and MFRA 2015, under the direction and control of MFA, scheduled are a clear violation of the Judgment.

238. Asked in writing to abide by the Judgment, Wilmington and MFRA 2015, through counsel, refused to cancel the February 6, 2023 nonjudicial foreclosure sale and refused to not schedule a future nonjudicial foreclosure sale. Therefore, they refused to abide by the terms of the Judgment.

239. Defendants repeatedly and willfully violated the Judgment.

240. Defendants have acted in contempt of the Judgment. As a direct and proximate result, the Najdas suffered damages and continue to suffer damages in an amount to be proven, plus interest, costs, attorneys' fees and further consequential damages.

## C. COUNT III
## (Breach of the Implied Covenant of Good Faith and Fair Dealing Against all Defendants)

241. Plaintiffs repeat, re-allege and incorporate by reference the allegations contained in the above paragraphs.

242. Defendants in bad faith exercised their discretionary right to foreclose on the Property, as they did so when they knew they could not do so nonjudicially while complying with the Judgment and while strictly complying with the Massachusetts consumer protection statutes and the conditions precedent to the exercise of the statutory power of sale in the Mortgage. Defendants brought the nonjudicial foreclosure instead of attempting to use the

Judgment from the Judicial Foreclosure knowing that the power of sale in the Mortgage had been merged into the Judgment.

243. Defendants knew they could not foreclose nonjudicially and were at risk of having the nonjudicial foreclosure, undertaken after the Judgment, declared void. In response, they willfully brought the not strictly compliant February 6, 2023 nonjudicial foreclosure in bad faith. Then Defendants willfully brought the not strictly compliant December 17, 2024 nonjudicial foreclosure in bad faith.

244. Defendants have breached the implied covenant of good faith and fair dealing. As a direct and proximate result, the Najdas suffered damages and continue to suffer damages in an amount to be proven at trial, plus interest, costs, attorneys' fees and further consequential damages.

## D. COUNT IV
## (Violation of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq. Against all Defendants)

245. Counterclaim Plaintiff repeats, re-alleges and incorporates by reference the allegations contained in the above paragraphs.

246. The Najdas are each a "consumer" as defined in the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692a(3).

247. PHL is a "debt collector" as defined in the FDCPA, 15 U.S.C. § 1692a because it because it regularly collects and attempts to collect, directly and indirectly, consumer due or owed or asserted to be due or owed to another.

248. PHL acts as a debt collector for MFA, MFRA 2015, and Wilmington.

249. MFA, MFRA 2015, Wilmington, and PHL used many collection techniques, including, but not limited to, collection letters, phone calls, and other actions.

250. MFA, MFRA 2015, Wilmington are vicariously liable for the actions of its agents, including but not limited to PHL, collecting on its behalf.

251. The alleged debt at issue is a consumer debt pursuant to 15 U.S.C. § 1692a.

252. By PHL making misleading representations as to the amount of the alleged debt, in communications PHL has violated 15 U.S.C. § 1692e, which prohibits the use of any false representation or deceptive means to collect or attempt to collect any debt, and violated §1692e(2)(A), which prohibits the false representation of the character, amount or legal status of the debt.

253. PHL, as an agent of MFA, MFRA 2015, and Wilmington, violated 15 U.S.C. § 1692g(b), which prohibits continuing to collect a debt without first verifying it once it had received a dispute notice, when PHL failed to validate the debt, including not sending a copy of the Judgment, and continued its collection activates after it had received Najdas' Dispute Letter.

254. By not sending the Najdas a copy of the Judgment, representing in dozens of communications the Loan's installment payments as ongoing (when the Note had merged into the Judgment and no monthly payments were due), PHL, on behalf of MFA, MFRA 2015, and Wilmington, has violated 15 U.S.C. § 1692e(2), which prohibits falsely representing the character of the purported debt to collect or attempt to collect any debt.

255. By causing Najda's telephone to ring excessively, for a non-validated debt, as an agent of MFA, MFRA 2015, and Wilmington, PHL violated 15 U.S.C. § 1692d(5)-(6) repeatedly.

256. MFA, MFRA 2015, Wilmington, and PHL violated 15 U.S.C. § 1692f, which prohibits unfair or unconscionable means to collect or attempt to collect any debt, when PHL, as the agent of MFA, MFRA 2015, and Wilmington, engaged in the unfair and unconscionable

actions detailed above.

257. PHL, as an agent of MFA, MFRA 2015, and Wilmington, violated 15 U.S.C. § 1692e(4), by representing that nonpayment of the purported debt would result in the seizure of the Property when the Judgment does not allow MFA, MFRA 2015, Wilmington, and PHL to obtain possession.

258. The violations of the FDCPA, including but not limited to those detailed above, are unfair and deceptive actions within the meaning of M.G.L. ch. 93A. 940 C.M.R. 3.16(4).

259. As a direct and proximate result of Defendants' violations of the FDCPA, the Najdas have suffered actual, statutory, and punitive damages as described herein and continue to suffer damages. The Najdas are therefore entitled to damages in an amount to be proven at trial, plus interest, costs, attorneys' fees and further consequential damages.

## E. COUNT V
## (Violations of Massachusetts Fair Debt Collection Practices Act (M.G.L. ch. 93, § 49) and M.G.L. ch. 93A Against all Defendants)

260. Plaintiffs repeat, re-allege and incorporate by reference the allegations contained in the above paragraphs.

261. MFA is a "creditor" within the meaning of M.G.L. ch. 93, § 49.

262. MFRA 2015 is a "creditor" within the meaning of M.G.L. ch. 93, § 49.

263. Wilmington is a "creditor" within the meaning of M.G.L. ch. 93, § 49.

264. At all times relevant to this counterclaim, MFA, MFRA 2015, Wilmington, and PHL were engaged in "trade or commerce" in Massachusetts within the scope of M.G.L. ch. 93A, § 1.

265. Plaintiffs are natural persons present and residing in Massachusetts.

266. The alleged debt Defendants attempted to collect is primarily for personal, family

or household purposes.

267. As outlined above, MFA, MFRA 2015, Wilmington, and PHL violated M.G.L. ch. 93, § 49 by attempting to collect the purported debts of Plaintiffs in an unfair, deceptive or unreasonable manner by (a) foreclosing nonjudicially in breach of the Judgment and Massachusetts law (b) attempting to collect post judgment amounts that they not entitled to collect (c) attempting to collect on a note and mortgage that had been extinguished.

268. Defendants' violations of Section 49 were per se unfair and deceptive acts under M.G.L. ch. 93A, § 2. M.G.L. ch. 93, § 49.

269. As a direct and proximate result of Defendants' violation of M.G.L. ch. 93, § 49 and M.G.L. ch. 93A, the Najdas have suffered damages totaling over sixty-one thousand seven hundred sixty dollars ($61,760.00) as a result of their conduct including but not limited to money spent on printing, mailing, and driving certified letters and filings to Defendants and their agents, drafting, time spent responding to the collection phone calls, letters and a collection lawsuit, humiliation, embarrassment, stress, emotional distress, costs and legal research and drafting fees expended in enforcing his legal rights, and costs and attorney's fees expended in enforcing his legal rights.

270. As a direct and proximate result of Defendants' violations of M.G.L. ch. 93, § 49, the Najdas have suffered actual damages, doubled or trebled, statutory damages, and punitive damages as described herein and continue to suffer damages. The Najdas are therefore entitled to damages in an amount to be proven at trial, plus interest, costs, attorneys' fees and further consequential damages.

## F. COUNT VI
## (Violations of Attorney General Regulations on Debt Collection (940 C.M.R. 1.00, et seq.) and M.G.L. ch. 93A Against all Defendants)

271. Plaintiffs repeat, re-allege and incorporate by reference the allegations contained in the above paragraphs.

272. At all times relevant to this complaint, MFA, MFRA 2015, Wilmington, and PHL were engaged in "trade or commerce" in Massachusetts within the scope of M.G.L. ch. 93A, § 1.

273. MFA, MFRA 2015, and Wilmington are "creditor[s]" "engaged in collecting a debt" as defined in 940 C.M.R. 7.03.

274. The Najdas are "debtor[s]" within the meaning of 940 CMR 7.03, a regulatory provision promulgated by the Massachusetts Attorney General pursuant to G.L. ch. 93A, § 2, because they were alleged to be liable for a consumer debt.

275. As detailed above, MFA, MFRA 2015, and Wilmington have violated M.G.L. ch. 93, §49, and the Massachusetts Attorney General's ("AG") debt collection regulations, 940 C.M.R. 7.00 et seq., by collecting a debt in an unfair, deceptive or unreasonable manner.

276. MFA, MFRA 2015, and Wilmington engaged in debt collection when it and its agents, including PHL, took the actions detailed above.

277. MFA, MFRA 2015, and Wilmington failed to comply with 940 C.M.R. 7.08(2) when it failed to validate the debt and failed to cease collection actions upon receipt of the Dispute Letter. These violations constitute unfair or deceptive acts or practices under M.G.L. ch. 93A. 940 C.M.R. 3.16(3).

278. MFA, MFRA 2015, and Wilmington failed to comply with 940 C.M.R. 7.08(2) when it failed to validate the debt, failed to send the requested materials to the Najdas, and continued its collection activates, including sending threatening written communications, demanding payment for an alleged debt MFA, MFRA 2015, Wilmington, and PHL had not validated. These violations constitute unfair or deceptive acts or practices under M.G.L. ch. 93A.

940 C.M.R. 3.16(3).

279. MFA, MFRA 2015, and Wilmington violated 940 C.M.R. 7.07(2) when it misrepresented the amount of the debt on multiple occasions, including written communications. These violations constitute unfair or deceptive acts or practices under M.G.L. ch. 93A. 940 C.M.R. 3.16(3).

280. MFA, MFRA 2015, and Wilmington violated 940 C.M.R. 7.07(8) by threatening that nonpayment of a debt would result in an action that could not legally be taken or was not intended to be taken. These violations constitute unfair or deceptive acts or practices under M.G.L. ch. 93A. 940 C.M.R. 3.16(3).

281. As detailed above, there is a pattern and practice of MFA, MFRA 2015, and Wilmington using false, deceptive, or misleading representations or means in connection with the collection of a debt in violation of 940 C.M.R. 7.00. These violations constitute unfair or deceptive acts or practices under M.G.L. ch. 93A. 940 C.M.R. 3.16(3).

282. Upon information and belief, MFA, MFRA 2015, and Wilmington's standard business practice is not to do due diligence on accounts and debts and to engage in the illegal conduct described above in order to minimize operating costs for MFA. MFA does so to earn windfall profits.

283. The conduct of MFA, MFRA 2015, and Wilmington was willful or knowing within the meaning of M.G.L. ch. 93A, § 2.

284. The unfair and deceptive actions occurred primarily and substantially within the Commonwealth.

285. The Najdas, who are not sophisticated persons, are victims of MFA, MFRA 2015, and Wilmington's unfair and deceptive practices.

286. As a direct and proximate result of Defendants' violations of the AG regulations, the Najdas have suffered damages totaling over sixty-one thousand seven hundred sixty dollars ($61,760.00) as a result of Defendants' conduct including but not limited to money spent on printing, mailing, and driving certified letters and filings to Defendants and their agents, drafting, time spent responding to the collection phone calls, letters and a collection lawsuit, humiliation, embarrassment, stress, emotional distress, costs and legal research and drafting fees expended in enforcing his legal rights, and costs and attorney's fees expended in enforcing his legal rights.

287. MFA, MFRA 2015, and Wilmington's failures to comply with the Massachusetts Attorney General's debt collection regulations, 940 C.M.R. 7.00, constitute per se violations of M.G.L. ch. 93A, § 2. 940 C.M.R. 3.16(3).

288. As a direct and proximate result of Defendants' violations of the Attorney General regulations, the Najdas have suffered actual damages, doubled or trebled, statutory damages, and punitive damages as described herein and continue to suffer damages. The Najdas are therefore entitled to damages, doubled or trebled, in an amount to be proven at trial, plus interest, costs, attorneys' fees and further consequential damages.

## G. COUNT VII
## (Violations of Division of Banks Regulations (209 C.M.R. 18.00, et seq.) and M.G.L. ch. 93A Against all Defendants)

289. Plaintiffs repeat, re-allege and incorporate by reference the allegations contained in the above paragraphs.

290. The Najdas are "consumer[s]" as defined in 209 C.M.R. 18.02 promulgated by the Massachusetts Division of Banks ("DOB"), because they were alleged to be personally liable for a consumer debt.

291. PHL is a "debt collector" as defined in 209 C.M.R. 18.02, and described itself as a

debt collector in written communications to Plaintiffs.

292. PHL acts as a debt collector for MFA, MFRA 2015, and Wilmington.

293. MFA, MFRA 2015, and Wilmington are vicariously liable for the actions of its agents, including but not limited to PHL, collecting on its behalf.

294. MFA, MFRA 2015, Wilmington, and PHL used many collection techniques, including, but not limited to, collection letters, phone calls, and other foreclosure collection acts.

295. By PHL making misleading representations as to the amount of the alleged debt in communications, PHL, as an agent of MFA, MFRA 2015, and Wilmington, has violated 209 C.M.R. 18.18, which prohibits the use of any false representation or deceptive means to collect or attempt to collect any debt, and violated 209 C.M.R. 18.18(2), which prohibits the false representation of the character, amount or legal status of the debt.

296. By not sending the complete verification, including not sending the Judgment, upon its receipt of the Najdas' Dispute Letter, PHL, as an agent of MFA, MFRA 2015, and Wilmington, has violated 209 C.M.R. 18.20(2).

297. PHL, as an agent of MFA, MFRA 2015, and Wilmington, violated 209 C.M.R. 18.20(2), which prohibits continuing to collect a debt without first verifying it once it had received a dispute notice, when MFA, MFRA 2015, Wilmington, and PHL failed to validate the debt and continued its collection activates after it had received Najda's Dispute Letter.

298. By not including all the language required, under 209 C.M.R. 18.20(1), in the Letter sent to the Najdas, PHL, as an agent of MFA, MFRA 2015, and Wilmington, has violated 209 C.M.R. 18.20.

299. PHL, as an agent of MFA, MFRA 2015, and Wilmington, violated 209 C.M.R. 18.19, which prohibits unfair or unconscionable means to collect or attempt to collect any debt,

when PHL, as an agent of MFA, MFRA 2015, and Wilmington, engaged in the unfair and unconscionable actions detailed above.

300. PHL, as an agent of MFA, MFRA 2015, and Wilmington, violated 209 CMR 18.18(5), by representing or implying that nonpayment of the purported debt would result in seizure or loss of possession of the Property when such action was either not lawful or not intended to be taken by the Defendants.

301. PHL, as an agent of MFA, MFRA 2015, and Wilmington, violated 209 CMR 18.18(2) by using false representations concerning the character of the purported debt when misrepresenting the debt as an ongoing installment debt, with payments due every month, when the debt had been merged into the Judgment.

302. The violations of 209 C.M.R. 18.00, including but not limited to the violations detailed above, are unfair and deceptive actions within the meaning of M.G.L. ch. 93A, 209 CMR 18.27.

303. As a direct and proximate result of PHL's, as an agent of MFA, MFRA 2015, and Wilmington, violations of the DOB regulations, Najda has suffered damages totaling over sixty-one thousand seven hundred sixty dollars ($61,760.00) as a result of Defendants' and their agents' conduct including but not limited to, money spent on drafting, printing, and mailing certified letters to Defendants' and their agents, time spent responding to the collection phone calls, letters and a collection lawsuit, humiliation, embarrassment, stress, emotional distress, costs and legal research and drafting fees expended in enforcing his legal rights, and costs and attorney's fees expended in enforcing his legal rights.

304. As a direct and proximate result of Defendants' violations of the Division of Banks Regulations, the Najdas have suffered actual damages, doubled or trebled, statutory

damages, and punitive damages as described herein and continue to suffer damages. The Najdas are therefore entitled to damages, doubled or trebled, in an amount to be proven at trial, plus interest, costs, attorneys' fees and further consequential damages.

**H. COUNT VIII**
**(Negligent Infliction of Emotional Distress Against all Defendants)**

305. Plaintiffs repeat, re-allege and incorporate by reference the allegations contained in the above paragraphs.

306. As "creditor[s]" as defined in 940 CMR § 7.03 "engaged in collecting a debt" as defined in 940 C.M.R. 7.03, MFA, MFRA 2015, Wilmington, and PHL were required to exercise due care and abide by certain state and federal regulations, and through its agents, when engaging in the collection activities against Najda detailed above.

307. MFA, MFRA 2015, Wilmington, and PHL knew, or should have known, that their and their agents' failure to exercise due care in the performance of the collection activities, which were repetitive, would cause the Najdas severe emotional distress.

308. As a proximate result of MFA, MFRA 2015, Wilmington, and PHL's, and their agents', actions detailed above, including incessant threatening letters, and shaming the Najdas by publishing to others that the Najdas would lose possession of the Property due to a debt (when no such debt had been validated), brining two illegal foreclosures in violation of the Judgment, and the consequences proximately caused by those actions, as hereinabove alleged, the Najdas suffered severe emotional distress and mental suffering, including but not limited to not being able to sleep and difficultly concentrating that they needed help to manage and respond to the influx of collection activities by Defendants, and damages.

309. As a direct and proximate result of Defendants' conduct, the Najdas are entitled damages in an amount to be proven at trial.

## I. COUNT IX
## (Violations of the Massachusetts Consumer Protection Act (M.G.L. ch. 93A) Against all Defendants)

310. Plaintiffs repeat, re-allege and incorporate by reference the allegations contained in the above paragraphs.

311. At all times relevant to this complaint, MFA, MFRA 2015, Wilmington, and PHL were engaged in "trade or commerce" in Massachusetts within the scope of M.G.L. ch. 93A, § 1.

312. As alleged in Count I through IX, above, MFA, MFRA 2015, Wilmington, and PHL's violations of M.G.L. ch. 93, § 49 were per se unfair and deceptive acts under M.G.L. ch. 93A, § 2. M.G.L. ch. 93, § 49.

313. As alleged in Count VI above, MFA, MFRA 2015, Wilmington, and PHL violated Attorney General regulations and these violations constituted per se unfair and deceptive acts within the meaning of M.G.L. ch. 93A, § 2.

314. As alleged in Count VII above, PHL, as an agent of MFA, MFRA 2015, Wilmington, violated Division of Banks regulations and these violations constituted per se unfair and deceptive acts within the meaning of M.G.L. ch. 93A, § 2.

315. MFA, MFRA 2015, Wilmington, and PHL's violations of M.G.L. ch. 93A § 2 were knowing and willful in nature.

316. None of Defendants maintain a place of business in Massachusetts. None of Defendants keep assets within Massachusetts.

317. A 93A demand letter is not required to be sent to Defendants.

318. The Defendants' violations of M.G.L. ch. 93A, § 2 were knowing and willful in nature.

319. As a direct and proximate result of Defendants' and their agents' violations of

M.G.L. c. 93A, the Najdas have suffered actual damages, doubled or trebled because conduct of Defendants was willful and knowing, statutory damages, and punitive damages as described herein and continue to suffer damages. The Najdas are therefore entitled to damages, doubled or trebled, in an amount to be proven at trial, plus interest, costs, attorneys' fees and further consequential damages, doubled or trebled.

**J. COUNT X**
**(Declaratory Judgment Regarding March 30, 2018 Judgment and M.G.L. ch. 244, §§ 11, 14 Against all Defendants)**

320. Plaintiffs repeat, re-allege and incorporate by reference the allegations contained in the above paragraphs.

321. An actual case or controversy exists between Plaintiffs and Defendants as to whether Defendants are entitled to undertake a nonjudicial foreclosure sale of the Property.

322. MFRA 2015 and Wilmington, acting at the direction of MFA, sent the notice of their intent to foreclose the Property, Notice of Sale, on November 21, 2024, for the foreclosure sale scheduled for December 17, 2024 knowing the Judgment did not authorize nonjudicial foreclosure and without obtaining an order of the Court to authorize a sale of the Property.

323. The Judgment does not authorize nonjudicial foreclosure.

324. Plaintiffs are entitled to a declaration that under the Judgment neither Citibank nor any privy can foreclose nonjudicially.

325. Judgment for possession did not enter for Citibank.

326. Neither Citibank nor one of the Defendants nor a privy can obtain possession of the Property.

327. Plaintiffs are entitled to a declaration that under the Judgment neither Citibank nor any privy can obtain a judgment of possession against the Najdas.

328. Plaintiffs are entitled to a declaration that Defendants cannot obtain possession of the Property.

## REQUESTS FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that the Court enter judgment against Defendants and:

A. Under Count I, enter a temporary restraining order restraining the Defendants' nonjudicial foreclosure sale, and, after further proceedings grant a preliminary and permanent injunctive relief enjoining Defendants from foreclosing nonjudicially;

B. Under Count II:

1. Issue an Order requiring Defendants to show cause why they should not be held in contempt;
2. Issue an Order requiring Defendants to provide forthwith verified copies of all records, including electronic records, relating to the decision to proceed and schedule the 2023 and 2024 nonjudicial foreclosure sales and Defendants' knowledge of the Judgment and communications between each other to coordinate the sales;
3. After an evidentiary hearing, find Defendants to be in contempt of the Judgment issued on March 30, 2018 by noticing nonjudicial foreclosures;
4. After an evidentiary hearing, issue an Order finding that Defendants' actions were malicious, deliberate, and willful as to equal the facts of cases where courts have found ch. 93A violations, and, in turn, issue an Order awarding multiple damages and reasonable attorney's fees to Plaintiffs in connection with prosecuting their

claims against Defendants;

C. Under Counts III, enter judgment in favor of the Najdas in an amount to be determined at trial;

D. Under Counts IV through VII, award damages, including actual, statutory, punitive, and compensatory damages, for violations of the FDCPA, MFDCA, AG, and DOB, and punitive damages, for violations of the FDCPA, MFDCA, AG, and DOB, sufficient to deter Defendants, which collectively earned over nine billion two hundred twenty million dollars ($9,220,000,000) in profits during 2023 in part due to their improper business practices, and others from engaging in conduct similar to that which formed the basis of the lawsuit;

E. Under Counts VIII, enter judgment in favor of the Najdas in an amount to be determined at trial;

F. Under Count IX, award actual damages, doubled or trebled pursuant to M.G.L. ch. 93A, and award statutory damages pursuant to M.G.L. ch. 93A, §9;

G. Under Count X:

1. Declare Defendants cannot foreclose nonjudicially;
2. Declare Defendants cannot obtain possession of the Property;

H. Award prejudgment interest, costs and reasonable attorneys' fees, including but not limited pursuant to M.G.L. ch. 93A, §9, 15 U.S.C. § 1692k and 15 U.S.C. § 1681n(a)(3); and

I. Award such other relief as the Court deems just and proper.

**DEMAND FOR JURY TRIAL**

The Najdas demand a jury trial on all issues so triable.

Respectfully submitted,
/s/ Renee Najda
Renee Najda
/s/ Andrew Najda
Andrew Najda
/s/ Charles Najda
Charles Najda

71 Flint Road,
Concord, MA 01742

Date: December 13, 2024

**VERIFICATION**

I, Andrew Najda, hereby verify that the foregoing recitation of facts, other than the allegations made on information and belief, are true based on my personal knowledge and on the documents that I reviewed for purposes of preparing this Verified Complaint.

Signed under the penalties of perjury on the 13th day of December, 2024.

/s/ Andrew Najda
Andrew Najda

I, Renee Najda, hereby verify that the foregoing recitation of facts, other than the allegations made on information and belief, are true based on my personal knowledge and on the documents that I reviewed for purposes of preparing this Verified Complaint.

Signed under the penalties of perjury on the 13th day of December, 2024.

/s/ Renee Najda
Renee Najda

I, Charles Najda, hereby verify that the foregoing recitation of facts, other than the allegations made on information and belief, are true based on my personal knowledge and on the documents that I reviewed for purposes of preparing this Verified Complaint.

Signed under the penalties of perjury on the 13th day of December, 2024.

/s/ Charles Najda
Charles Najda