**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| WILMINGTON TRUST, NATIONAL ASSOCIATION, NOT IN ITS INDIVIDUAL CAPACITY BUT SOLELY IN ITS CAPACITY AS TRUSTEE OF MFRA TRUST 2015-1,<br><br>Plaintiff,<br><br>v.<br><br>RENEE ANNA NAJDA a/k/a RENEE NAJDA et al.,<br><br>Defendants,<br><br>v.<br><br>SANTANDER BANK N.A. f/k/a SOVEREIGN BANK<br><br>Party-in-Interest. | Civil Action No. 14-13593-MJJ |
| RENEE NAJDA, et al.,<br><br>Plaintiff,<br><br>v.<br><br>MFA FINANCIAL, INC., et al.,<br><br>Defendants. | Civil Action No. 24-13086-MJJ |

**MEMORANDUM AND ORDER**

October 27, 2025

JOUN, D.J.

These cases arise out of an attempt by Renee Najda, Charles Najda, and Andrew Najda (the "Najdas") to halt the foreclosure of a property located at 71 Flint Road, Concord, Massachusetts (the "Property"). The record abundantly reveals that the Najdas' attempts to halt the foreclosure of the Property, through repetitive motions and consistent requests for extension, have unnecessarily delayed resolution of the cases at hand. After more than ten years of litigation, I find that Wilmington Trust, National Association, not in its individual capacity but solely in its capacity as Trustee of MFRA Trust 2015-1 ("Wilmington" or "Wilmington as Trustee of MFRA Trust") is authorized to conduct a public sale of the Property.

## I. BACKGROUND AND PROCEDURAL HISTORY

### A. Commencement Of The 2014 Action

In September 2014, Citibank, N.A., as Trustee for the benefit of SWDNSI Trust Series 2010-3 ("Citibank as SWDNSI Trustee") initiated an action, seeking a judicial foreclosure of the Property, and related claims[1] against the Najdas (the "2014 Action"). [Doc. No. 1].[2] The Najdas filed amended counterclaims against former servicers,[3] which were nearly all dismissed by March 2017. [Doc. Nos. 13, 24, 45, 89, 201].

[1] Citibank as SWDNSI Trustee brought the following counts: Count I – Declaratory Judgment; Count II – Breach of Contract; Count III – Servicemembers Civil Relief Act; Count IV – Conditional Judgment; Count V – Foreclosure; Count VI – Possession; and Count VII – Unjust Enrichment. [Doc. No. 1].

[2] Citations to the docket herein are citations to filings entered in 14-cv-13593, unless noted otherwise. *E.g.*, [Doc. No. __; 24-cv-13086 Doc. No. __].

[3] The Najdas brought the following amended counterclaims: Count I – Declaratory Judgment, Count II – Slander of Title; Count III – Breach of Contract against CitiMortgage; Count IV – Breach of the Implied Covenant of Good Faith and Fair Dealing against CitiMortgage; Count V – Promissory Estoppel against CitiMortgage; Count VI – Negligent Misrepresentation against CitiMortgage; Count VII – Unjust Enrichment against CitiMortgage; Count VIII – Violation of the Fair Debt Collection Practices Act against Citibank, SLS, and PLS; Count IX – Violation of Real Estate Settlement Procedures Act against SLS; and Count X – Violation of M.G.L. c. 93A §§ 2, 9 against all Counterclaim Defendants. [14-cv-13593 Doc. No. 45].

The action proceeded to a mixed bench and jury trial in November 2017. [Doc. Nos. 342, 368]. The jury returned a verdict in favor of Citibank not in its individual capacity but solely as separate trustee for PMT NPL 2015-11 ("Citibank as PMT NPL Trustee")[4] on the claims for breach of contract and M.G.L. c. 93A and Judge George A. O'Toole found in favor of Citibank as PMT NPL Trustee on the remaining claims. [*Id*.]. In relevant part, Judge O'Toole found that Citibank as PMT NPL Trustee held the Najdas' Note and Mortgage; the Najdas were in breach thereunder for failing to make all required payments; and Citibank as PMT NPL Trustee had satisfied all pre-foreclosure requirements, including the notice requirement under Paragraph 22 of the Mortgage. [Doc. No. 368].

On March 30, 2018, Judge O'Toole directed entry of judgment on all remaining claims in favor of Citibank as PMT NPL Trustee (the "2018 Judgment"). [Doc. No. 369]. Citibank as PMT NPL Trustee was declared the lawful holder of the Note and Mortgage withstanding to foreclose on the Property. [*Id*.]. The judgment stated that the Najdas had two months from the entry of the Judgment, or until May 30, 2018, to pay the total amount owing ($4,833,073.61) plus interest: "Otherwise, the Court shall enter an order pursuant to Mass. Gen. Laws ch. 244, § 11, authorizing [Citibank as PMT NPL Trustee] to conduct a public sale of the Property pursuant to

---

[4] As noted in Judge O'Toole's 2018 Judgment,

> [t]he Mortgage was assigned several times. By Assignment dated October 13, 2010, MERS assigned the Mortgage to CitiMortgage. By Assignment dated September 18, 2012, CitiMortgage assigned the Mortgage to PennyMac, Corp. By Assignment dated June 24, 2014, PennyMac assigned the Mortgage to Citibank, N.A., as Trustee for the benefit of SWDNSI Trust Series 2010-3. By Assignment dated November 12, 2015, Citibank, N.A., as Trustee for the benefit of SWDNSI Trust Series 2010-3, assigned the Mortgage to Christiana Trust, a division of Wilmington Savings Fund Society, FSB, not in its individual capacity, but solely as separate trustee for PMT NPL Financing 2015-1 ("Christiana Trust"). By assignment dated May 31, 2016, Christiana Trust assigned the Mortgage to Plaintiff Citibank Trustee, N.A. not in its individual capacity, but solely as separate trustee for PMT NPL Financing 2015-1 . . . As of the time of trial, [Citibank as PMT NPL Trustee] was the holder of the Mortgage.

[Doc. No. 369 at 2–3].

the power of sale contained in the Mortgage with such sale to be published and noticed in the same or similar manner as provided for in Mass. Gen. Laws ch. 244, § 14, and upon such other terms and conditions as the Court may require." [*Id.* at ¶ 5].

The Najdas appealed to the United States Court of Appeals for the First Circuit (the "First Circuit") alleging that there was improper diversity between the parties at the time the action was commenced. [Doc. No. 420, 449]. The First Circuit remanded the Najdas appeals twice to Judge O'Toole's session to determine whether complete diversity existed between the parties. [Doc. Nos. 472, 495]. On each remand, in orders issued on February 27, 2023 and September 7, 2023, respectively, Judge O'Toole found that there were no issues of diversity between the parties. [Doc. Nos. 490, 503]. On July 12, 2024, the First Circuit affirmed Judge O'Toole's September 7, 2023 Order. [Doc. No. 510]. The Najdas then appealed the case to the Supreme Court, which denied writ of certiorari on April 17, 2025. [Doc. Nos. 512, 516].

### B. Commencement Of The 2024 Action: The Najdas File A Separate Action Before This Court

While the appeal to the Supreme Court in the 2014 Action was pending, the Najdas filed a separate action which came before me. On December 13, 2024, the Najdas filed a Complaint for contempt and injunctive relief against Defendants MFA Financial, Inc., MFRA Trust 2015-1, MFA 2018-NPL1, LLC, Wilmington Trust National Association, Planet Home Lending, LLC, PNMAC Capital Management, LLC, PMT NPL Financing 2015-1, and Citibank, N.A. (the "2024 Defendants")[5] for an alleged violation of the 2018 Judgment.[6] [24-cv-13086 Doc. No. 1].

[5] None of the named 2024 Defendants are proper parties to the Najdas' mortgage loan. As explained above, and as elucidated in Defendants' motion to dismiss, [24-cv-13086 Doc. Nos. 53–54], Citibank as PMT NPL Trustee was declared the lawful holder of the Note and Mortgage withstanding to foreclose on the Property.

[6] The Najdas brought ten counts: Count I – Injunctive Relief; Count II – Contempt for Violation of a 2018 Judgment; Count III – Breach of the Implied Covenant of Good Faith and Fair Dealing; Count IV –

In their Complaint, the Najdas alleged that 2024 Defendants are foreclosing nonjudicially in violation of the 2018 Judgment, which required a foreclosure sale to be ordered by the Court and did not authorize nonjudicial foreclosure. [24-cv-13086 *Id.* at 1–2].

Along with this Complaint, the Najdas filed an ex-parte Motion for Temporary Restraining Order and Preliminary Injunction to halt the alleged unlawful foreclosure which was scheduled for December 17, 2024. [24-cv-13086 Doc. Nos. 3, 4]. Without knowledge of the full history in the 2014 Action, to keep the status quo, on December 16, 2024, I allowed the Najdas' motion. [24-cv-13086 Doc. No. 8]. On December 19, 2024, after Wilmington was notified of the Temporary Restraining Order, Wilmington filed a Motion to Transfer the case to Judge O'Toole's session. [24-cv-13086 Doc. No. 12]. I denied the motion because, pursuant to Local Rule 40.1(g)(4), the 2014 Action had been closed six years prior to the filing of the 2024 Action.[7] [24-cv-13086 Doc. No. 15]. The case proceeded in course, with the Najdas filing an Amended Complaint and the 2024 Defendants filing Motions to Dismiss.[8] The Najdas were granted multiple extensions and leave to file a Second Amended Complaint.[9]

---

Violation of the Federal FDCPA 15 U.S.C.A. § 1692; Count V – Violation of Massachusetts' FDCPA M.G.L. ch. 93, § 49; Count VI – Violation of 940 C.M.R. 1.00, et seq; Count VII – Violations of 209 CMR 18.00, et seq; Count VIII – Negligent Infliction of Emotional Distress; Count IX – Violation of M.G.L. ch. 93A; Count X – Declaratory Judgment Regarding a 2018 Judgment. [24-cv-13086 Doc. No. 1].

[7] Local Rule 40.1(g)(4) states that "[c]ivil cases shall not be deemed related if more than two years have lapsed since the closing of the earlier case."

[8] On January 24, 2025, the 2024 Defendants filed Motions to Dismiss. [24-cv-13086 Doc. Nos. 29, 31, and 40]. With the Najdas filing an Amended Complaint on February 21, 2025,[8] [24-cv-13086 Doc. No. 46], I denied the 2024 Defendants' Motions to Dismiss as moot. [24-cv-13086 Doc. No. 55]. In addition to the same ten counts the Najdas asserted in their original Complaint, the Najdas allege four additional counts against Defendants: Count IV – Slander of Title; Count V – Violation of M.G.L. c. 244 §12; Count VI - Violation of M.G.L. c. 244 §35C; Count XIII – Res Judicata. [Doc. No. 46]. On March 11, 2025, the 2024 Defendants filed a Motion to Dismiss the Amended Complaint. [24-cv-13086 Doc. Nos. 53–54].

[9] On March 19, 2025, the Najdas requested and were granted an extension to respond to the Second Motion to Dismiss until April 15, 2025. [24-cv-13086 Doc. No. 57]. On April 8, 2025, the Najdas again

### C. Wilmington Replaces Citibank As Plaintiff In The 2014 Action

Meanwhile in the 2014 Action, on March 21, 2025, Citibank as PMT NPL Trustee sought to have Wilmington replace it. [Doc. No. 513]. In response to Citibank as PMT NPL Trustee's Motion to Substitute, on March 26, 2025, the Najdas filed a Motion for Contempt in the 2024 Action, [24-cv-13086 Doc. No. 58], arguing that any request for substitution violated my January 2, 2025, Order denying transfer of the 2024 Action to Judge O'Toole's session. [*Id.*].

Then on May 15, 2025, after determining the Najdas had not yet paid the judgment, Judge O'Toole allowed Citibank as PMT NPL Trustee to substitute Wilmington as Trustee of MFRA Trust, so that it, as assignee of the Mortgage, may seek to enforce the Judgment and proceed with foreclosure of the Property by public sale. [Doc. No. 518]. The substitution was based on assignment of the Najdas' mortgage to Wilmington after the 2018 Judgment. [*Id.*].[10] After Judge O'Toole's granted substitution on May 19, 2025, the Najdas then filed a Motion to Enjoin in the 2024 Action. [24-cv-13086 Doc. No. 72]. The Najdas argued that the Court should enjoin the allegedly "duplicative litigation" raised by the Judge O'Toole's substitution order because "(1) this Court has prior exclusive jurisdiction over the Property, (2) this action is the

requested and received an extension of time to respond to the Second Motion to Dismiss until April 25, 2025. [24-cv-13086 Doc. No. 63]. On April 23, 2025, two days before their response to 2024 Defendants' Second Motion to Dismiss was due, the Najdas filed a Motion for Leave to File a Second Amended Complaint to "update existing legal challenges and include new challenges reflecting the recent developments, to make sure all necessary parties are before the court, to add facts that postdate the complaint, to correct alleged deficiencies in the Amended Complaint raised in the motion to dismiss…and to revise typographical errors." [24-cv-13086 Doc. No. 65]. On April 24, 2025, one day before their response to the Second Motion to Dismiss was due, the Najdas requested a third extension from this Court to file a response to the Second Motion to Dismiss in another ten days or until this Court decided on their Motion for Leave. [24-cv-13086 Doc. No. 66]. The Najdas also sought leave to file a reply in support of their Motion for Leave to File a Second Amended Complaint. [24-cv-13086 Doc. No. 72].

[10] The Najdas filed a Notice of Appeal of the May 15, 2025 Order to the First Circuit. [Doc. No. 519].

first-filed case, and (3) this action can address all issues between the parties." [24-cv-13086 Doc. No. 73 at 8].

Shortly thereafter, in the 2014 Action, Wilmington sought an Order of Sale. [Doc. No. 522]. On June 6, 2025, the Najdas filed a second Motion to Enjoin, repeating the same arguments in the first Motion to Enjoin, except for new arguments concerning a pending Motion for Order of Sale in the 2014 Action. [24-cv-13086 Doc. No. 78; Doc. No. 522]. As relevant here, Wilmington underscored the intentions of its Motion for Sale, namely that it "solely moves for an Order granting Plaintiff with the authority to conduct a public foreclosure sale of the Property pursuant to Mass. Gen. Laws ch. 244, § 11 and the power of sale in the Mortgage" and that Wilmington "assures that it will not take steps to schedule a foreclosure sale until the Injunction is dissolved, leave of court is granted, or the order is otherwise rendered moot." [Doc. No. 522 at 2].[11]

The time has now come to put this long-running saga to an end.

## II. DISCUSSION

### A. Motions Pertaining To The 2014 Action

#### 1. Order To Conduct Public Sale

By Court Order, on March 30, 2018, Citibank as PMT NPL Trustee was declared the lawful holder of the Note and Mortgage withstanding to foreclose on the Property. [Doc. No. 369]. The judgment required the Najdas to pay the total amount owing, $4,833,073.61 plus

---

[11] On June 26, 2025, I held a status conference and stated that I may reconsider my decision on the original Motion to Transfer. [24-cv-13086 Doc. No. 81]. Subsequently, the Najdas requested permission to file a supplemental memorandum to their initial Opposition to 2024 Defendants' Motion to Transfer, which I allowed. [24-cv-13086 Doc. Nos. 81, 85]. After the hearing, on June 30, 2025, the Najdas filed a Motion for Entry of Briefing Schedule, requesting additional time to file their Opposition to the 2024 Defendants' Motion to Transfer. [24-cv-13086 Doc. No. 82]. On July 14, 2025, the Najdas filed their Opposition. [24-cv-13086 Doc. No. 84]. This issue has become moot as, on September 8, 2025, Judge O'Toole, with my consent, transferred the 2014 Action to my session. [Doc. No. 544].

interest by May 30, 2018. [*Id.*]. If they did not pay, Judge O'Toole determined that "the Court shall enter an order pursuant to Mass. Gen. Laws ch. 244, § 11, authorizing [Citibank as PMT NPL Trustee] to conduct a public sale of the Property pursuant to the power of sale contained in the Mortgage with such sale to be published and noticed in the same or similar manner as provided for in Mass. Gen. Laws ch. 244, § 14, and upon such other terms and conditions as the Court may require." [*Id*. at ¶ 5]. On May 15, 2025, Judge O'Toole allowed Citibank as PMT NPL Trustee to substitute Wilmington Trust as Trustee of MFRA Trust, so that it, as assignee of the Mortgage, may seek to enforce the Judgment and proceed with foreclosure of the Property by public sale. [Doc. No. 518].

As of this date, the Najdas have not paid the judgment amount and all pending appeals relating to the 2018 Judgment have been resolved. Furthermore, Wilmington has shown the mortgage was assigned to it by instrument recorded in the Middlesex County Registry of Deeds. [Doc. No. 410; Doc. No. 522-2]. And Wilmington has shown compliance with 50 U.S.C. c. 50 § 3901 et seq., and Chapter 57 of the Massachusetts Acts of 1943, as amended, by obtaining a judgment to Determine Military Status of Renee Anna Najda, issued by the Massachusetts Land Court, dated February 7, 2020, declaring that the Najdas are not entitled to the benefits of the Servicemembers Civil Relief Act (the "SCRA Judgment"). [Doc. No. 522-3]. Finally, as explained below, I lift my December 16, 2024 Order restraining and enjoining the foreclosure sale of the Property at issue. Given these facts, Wilmington's Motion for Sale is <u>GRANTED</u>.

The Najdas argue that the Motion for Sale wrongly seeks entitlement to an execution of the judgment of possession. At this stage, Wilmington does not seek an execution of judgment of possession. Rather, Wilmington seeks the authority to conduct a public foreclosure sale on the Property. The Najdas' argument is unavailing. As such, the Najdas Motion to Strike is <u>DENIED</u>.

The Motion for leave to file excess pages in support of their opposition to the Motion to Sale is similarly DENIED.

**2. Motion For Indicative Ruling**

The Najdas seek an indicative ruling concerning Judge O'Toole's Order granting the motion to substitute Wilmington as plaintiff. For the reasons stated in Wilmington's Opposition, [Doc. No. 549], the Najdas' Motion for Indicative Ruling is DENIED.

**3. Motion For Sanctions**

Wilmington also seeks sanctions pursuant to Fed. R. Civ. P. 11 against the Najdas. Specifically, Wilmington argues the 2014 Action has unnecessarily spanned over a decade due to the Najdas' frivolous appeals, numerous motions, and separate complaint in the 2024 Action. While I agree with Wilmington that the Najdas seem to have filed certain motions and appeals as delay tactics, I also find that not all of the Najdas' appeals were completely frivolous. Wilmington's Motion for Sanctions is DENIED.

**B. The 2024 Action**

"Issue preclusion (also called collateral estoppel) 'prevents a party from relitigating issues that have been previously adjudicated.'" *Manganella v. Evanston Ins. Co*., 700 F.3d 585, 591 (1st Cir. 2012) (quoting *Rodríguez–García v. Miranda–Marín,* 610 F.3d 756, 770 (1st Cir. 2010)). "The doctrine applies to issues of fact as well as those of law, *Allen v. McCurry,* 449 U.S. 90, 94 (1980), and can apply where the subsequent proceeding involves a cause of action different from the first, *see Comm'r v. Sunnen,* 333 U.S. 591, 601, (1948)." *Id.* "[T]he doctrine of issue preclusion 'prevents re-litigation of an issue where the following four-pronged test is met': '(1) the issue sought to be precluded must be the same as that involved in the prior action; (2) the issue must have been actually litigated; (3) the issue must have been determined by a valid and binding final judgment; and (4) the determination of the issue must have been essential to the

judgment.'" *O'Connell v. Fed. Ins. Co.*, 484 F. Supp. 2d 223, 225–26 (D. Mass. 2007) (quoting *Grella v. Salem Five Cent Sav. Bank,* 42 F.3d 26, 30 (1st Cir. 1994)).

The issues in the 2024 Action and in the 2014 Action are the same for issue preclusion purposes. Both actions revolve around the question of who held the Note and Mortgage as well as the mortgagee's right to foreclose on the Property. In their most recent action, the Najdas seek injunction against foreclosure and a declaration regarding their rights pertaining to the mortgage. Although the Najdas ostensibly bring new issues and claims: that the 2024 Defendants violated the 2018 Judgment, that the mortgage assignments after the 2018 Judgment are void, that the 2024 Defendants sent a false Paragraph 22 notice after the 2018 Judgment, these issues hinge on the same issue in the 2014 Action: the mortgagee's right to foreclose on the Property. As such, the first prong or element of issue preclusion is met.

"For purposes of issue preclusion, final judgment includes any prior adjudication of an issue in another action that is determined to be sufficiently firm to be accorded conclusive effect." *Klimowicz v. Deutsche Bank Nat'l Tr. Co.*, 264 F. Supp. 3d 309, 317 (D. Mass. 2017), aff'd, 907 F.3d 61 (1st Cir. 2018) (cleaned up).

The issues of who held the Note and Mortgage and whether the mortgagee satisfied all pre-foreclosure requirements, including the notice requirement under Paragraph 22 of the Mortgage, were litigated to final judgment in the 2014 Action. In the 2014 Action, the jury returned a verdict in favor of Citibank as PMT NPL Trustee on the claims for breach of contract and M.G.L. c. 93A and Judge O'Toole found in favor of Citibank PMT NPL Trustee on the remaining claims. On March 30, 2018, Judge O'Toole directed entry of judgment on all remaining claims in favor of Citibank as PMT NPL Trustee. The case was then closed. As made clear by the 2018 Judgment, the issue of who held the note and mortgage and who had the

authority for foreclosure was actually litigated, determined by final judgment, and essential to the judgment.

The Najdas' own Motion for Contempt show the problems that arise from relitigating the same issues in two cases. *See* [Doc. Nos. 58; 14-cv-13593 Doc. No. 518 (In response to the Motion to Substitute in the 2014 Action, the Najdas filed a Motion for Contempt in the 2024 action arguing that the Motion to Substitute violated this Court's January 2, 2025, Order denying the 2024 Defendants' Motion to Transfer. Meanwhile, in the 2014 Action, on May 15, 2025, Judge O'Toole granted Citibank's Motion to Substitute, and stated Wilmington as MFRA Trustee "may seek to enforce the Judgment and proceed with foreclosure of the Property by public sale.")]. Upon dismissing this case, I also lift my Order preventing foreclosure of sale of the Property.

## III. CONCLUSION

For the reasons outlined above, Wilmington's Motion for Order of Sale is GRANTED. [Doc. No. 522]. The Najdas' Motion to Strike, Motion for Leave to File Excess Pages, and Motion for Indicative Ruling are DENIED. [Doc. Nos. 523, 532, 547]. Wilmington's Motion for Sanctions is DENIED. [Doc. No. 540].

The 2024 Defendants' Motion to Dismiss, [24-cv-13086 Doc. No. 53], is GRANTED based on the doctrine of collateral estoppel. The Najdas' Motion for Contempt, Motion for Leave to File Second Amended Complaint, Motion for Extension of Time, Motion for Leave to File Reply, two Motions for Injunctive Relief, and Motion for Entry of Briefing Schedule are DENIED as moot. [24-cv-13086 Doc. Nos. 58, 65, 66, 71, 72, 78, 82]. Finally, I lift my December 16, 2024 Order restraining and enjoining foreclosure sale of the Property at issue. [24-cv-13086 Doc. No. 8]. All future filings related to this matter shall be filed in *Citibank N.A., v. Najda et al*, No. 14-cv-13593.

SO ORDERED.

/s/ Myong J. Joun
United States District Judge